PALMS and another vs. SHAWANO COUNTY and others.

*September 26 — October 14, 1884.*

*(1, 2) County boundaries: Divergence of range lines: Construction of statutes: Clerical error. (3, 4) Constitutional law: Construction of statute: Creation of county in futuro: Taxation.*

| | |
|---|---|
| 61 | 311 |
| 81 | 433 |
| 61 | 211 |
| 88 | 3 |
| 61 | 211 |
| 82 Minn | 74 |
| 61 | 211 |
| 116 | ³198 |

1. Where an act of the legislature defining the boundaries of a county describes a line as following the line between certain ranges, the line so described follows such range line although the latter may diverge either to the east or west at correction lines.

2. Where from the inspection of the whole of a legislative act the intention can be ascertained, a false description will be rejected as surplusage, or words will be substituted in place of those wrongly used, which will give effect to the law. Thus the word *north* is substituted for the word *south* used, through a clerical error, in sec. 12, ch. 114, Laws of 1879, defining the boundaries of New county.

3. A legislative act should, if possible, be so construed as not to conflict with the constitution and that it may be upheld.

4. Ch. 114, Laws of 1879, providing that certain territory of Oconto county "shall constitute and be known as the county of New" (sec. 12); and that "said county of New is hereby attached to and made a part of the county of Shawano, for all county and judicial purposes, until it shall appear to the secretary of state from a census . . . that said county of New has a population of 1,000, when said county shall be organized by the election of county officers as in other counties in this state" (sec. 13), did not create a county *in præsenti*, but merely detached such territory from Oconto county, attached it temporarily to Shawano county, and provided that it should *become a county* in the future. It was, therefore, a valid enactment, and after it took effect county taxes within such territory were properly levied and collected by the county board of Shawano county.

APPEAL from the Circuit Court for *Langlade* County.

The case is sufficiently stated in the opinion. The circuit court held that ch. 114, Laws of 1879, was invalid so far as it attempted to confer jurisdiction upon the county of *Shawano* to assess taxes and attempts to create the county of

New. From a judgment in favor of the plaintiff the defendants appealed.

For the appellants there was a brief by *H. C. French,* District Attorney, and *Gabe Bouck,* of counsel, and oral argument by *Mr. Bouck.*

For the respondents there was a brief by *Finch & Barber,* and oral argument by *Mr. Barber.*

TAYLOR, J. This is an action brought to set aside the taxes of 1879, levied upon certain lands now in Langlade county, by the authority of the county board of supervisors of Shawano county. The learned counsel for the respondents claim that the county board of Shawano county had no authority to levy the taxes in question. The authority for levying the same by the county of Shawano depends upon the construction and validity of secs. 12–16, ch. 114, Laws of 1879. Sec. 12 of said chapter reads as follows:

"All the remaining portion of the county of Oconto included within the following boundaries, to wit: commencing on the township line between townships thirty and thirty-one, where the range line between the ranges ten and eleven south intersect said township line; thence east along the same to the same range line north; thence north along said range line to its intersection with the boundary line between the states of Wisconsin and Michigan; thence southerly along said boundary line to the range line between ranges fourteen and fifteen; thence south on said range line to the township line between townships forty and forty-one; thence east on said township line to the range line between ranges fourteen and fifteen; thence south on said range line to the northwest corner of section nineteen, in township thirty north, of range fifteen east; thence east along section lines to the northeast corner of section twenty, in the same township and range; thence south to the township line between townships thirty and thirty-one; thence west to the place of

beginning,— shall constitute and be known as the county of New." [1]

It is aigued by the learned counsel for the respondents that the territory attempted to be described in said section is so indefinite and uncertain that it is impossible to determine what the boundaries are, and that it is void for that reason.

Upon a careful reading of the section, and tracing the lines as described in the section on the map of the state, we find no difficulty in following them on the west, north, and east boundaries until we come down " to the northwest corner of section nineteen, in township thirty north, of range fifteen east; thence east along section lines to the northeast corner of section twenty, in the same township and range." To this point there can be no reasonable doubt as to the line intended by the legislature. The boundary of the territory described commences on the west side, where the range line between ranges 10 and 11 E. crosses the township line between townships 30 and 31 N.; thence north on said range line to the northern boundary of the state; thence along said northern boundary of the state in a southerly direction to the range line between ranges 14 and 15 E.; thence south on said range line to the northwest corner of section 19, etc., as above quoted.

It is true, there is another line stated in the act, viz.: Immediately after the words " thence south on the range line between ranges fourteen and fifteen," is the following: " To the township line between townships forty and forty-one; thence east on said township line to the range line between ranges fourteen and fifteen." It will be seen that this course does not add any force to the description of the eastern boundary of the territory, as the line described as running east on township line between townships 40 and 41,

[1] The name of New county was subsequently changed to Langlade county.

does not pass the range line between ranges 14 and 15 E., and that range line forms the eastern boundary down to the northwest corner of section 19, in township No. 30. That description was inserted because the range line between ranges 14 and 15 is corrected where it crosses the township line between townships 40 and 41, and is shifted a short distance to the east. But the eastern boundary of the territory would have been just as certain had this east course been entirely omitted from the description, and the boundary in the act been as we have stated it above; starting from the point where the north boundary of the state crosses the range line between ranges 14 and 15, and thence south on the range line between ranges 14 and 15 to the northwest corner of section 19, in township 30, etc.

That the legislature have inserted this unnecessary description of the line in the east boundary of the territory can have little or no significance from the fact that in the same section, in describing the west boundary of the territory, it was not deemed necessary to take notice that the range line between ranges 10 and 11 had the same divergence to the east at the township line between townships 40 and 41 N. as the range line between townships 14 and 15. It will be seen by an examination of the Revised Statutes that, in describing the boundaries of counties by range lines, no attention is given to the fact that these range lines diverge either to the east or west where they cross the correction lines on the government surveys. When the legislature describes a line as following a range line either north or south, it follows that line between the same ranges whether it diverges east or west at the correction lines. The description in the act in question as the east boundary of the territory being south on the range line between ranges 14 and 15 to the northwest corner of section 19, in township 30, of range 15 E., is in no respect indefinite or uncertain because the range line is further west after it crosses the township line between town-

ships 30 and 31, in going south; and the range line in its course south comes to the northwest corner of said section 19.

The only trouble in the description is the course given after the line reaches the "northeast corner of section twenty, in township thirty, range fifteen east." In the section the description is, "thence south to the township line between townships thirty and thirty-one, and thence west to the place of beginning." It is evident that a line running south from the point indicated would never reach the township line between 30 and 31. We think it is clearly apparent that the word "south" was a mere clerical error, and was intended to be "north." The word "south" destroys all sense in the description; the word "north" makes it sensible and makes the boundary complete. With the word "north" inserted the line would reach the township line between townships 30 and 31, and the last course would reach the place of beginning and make the boundary complete.

The learned counsel for the respondents state the true rule for construing a statute of this kind: "The court will inspect the whole act, and, if the true intention of the legislature can be reached, the false description will be rejected as surplusage, or words substituted, in the place of those wrongly used, which will give effect to the law." *Madison, W. & M. P. R. Co. v. Reynolds,* 3 Wis. 287; *Nazro v. M. M. Ins. Co.* 14 Wis. 295; *Williams v. McDonal,* 3 Pin. 331; *Harrington v. Smith,* 28 Wis. 43; *Attorney General v. Railroad Cos.* 35 Wis. 426, 557; *State ex rel. State Agr'l Society v. Timme,* 56 Wis. 423, 427; *Moody v. Stephenson,* 1 Minn. 401; *People ex rel. Gale v. Onondaga,* 16 Mich. 254; *People ex rel. Escott v. Hoffman,* 97 Ill. 234; *Mattoon v. Young,* 45 N. Y. 696. Construing the statute as we do, there is no such uncertainty in the boundaries of the territory described in the statute as to render the act void for want of a sufficient description.

It is further contended, by the learned counsel for the respondents, that the act is unconstitutional and void because it purports to create a county without providing any organization for it, and attaching to it another organized county for all county and judicial purposes. This objection is based upon sec. 13, ch. 114, Laws of 1879, which reads as follows:

"Said county of New is hereby attached to and made a part of the county of Shawano, for all county and judicial purposes, until it shall appear to the secretary of state, from a census of the population of said county of New, duly taken, either by the state of Wisconsin or the United States, that said county of New has a population of one thousand, when said county shall be organized by the election of county officers as in other counties in this state."

It is claimed by the learned counsel for the respondents that secs. 12 and 13, above quoted, created a county *in præsenti*, in fact and in law, and that it is unconstitutional to subject such county so created to the government of the officers of another county. In the view we take of this statute, it becomes necessary to determine whether, under the constitution, the legislature may attach an existing county to some other county for governmental purposes. It may be admitted, for the purposes of this case, that no such power exists. Still we should be compelled to hold that the act in question is a valid act. If we look at the substance of what is enacted by the law in question, instead of the letter of the law, we can have no difficulty in discovering that the legislature did not intend to create a county *in præsenti* of the territory described; and, so far as the act speaks of the territory as a county having a legal and corporate existence, it refers to the time when it may be organized as such by the election of the proper officers for that purpose. It is absurd, in a legal sense, to speak of mere territory as a county, when the people within such territory are

not clothed with any of the powers necessary to constitute them a municipal corporation. ·

The act should be construed so as to uphold its provisions rather than render them nugatory. If, by giving them one construction, the act would be void as contravening some constitutional inhibition, and they are susceptible of another construction which would avoid that difficulty, then the latter construction should be given, unless the language of the statute is so clear and unambiguous as to exclude such construction. We think the act fairly discloses these facts: *first*, that it was the intention of the legislature to detach the territory called the county of New and described in the act, from the county of Oconto; *second*, to attach such territory to the county of Shawano temporarily; and, *third*, to create and organize a new county of such territory in the future, when it should be ascertained, in the manner prescribed by the act itself, that the territory contained 1,000 or more inhabitants. It is, in effect, as if the legislature had said: "This territory (describing it) shall be an organized county of this state, by the name of New, when it is ascertained, in the manner provided, that it contains 1,000 or more inhabitants, and until such fact is ascertained, in the way prescribed, such territory is detached from the county of Oconto and attached to the county of Shawano."

The fact that the act says such territory shall be attached to Shawano for all county and judicial purposes, has no other or different meaning than if it had simply said such territory shall be attached to Shawano county for all purposes. When attached for all county and judicial purposes it is attached for all purposes of county government, and becomes a part of the county to which it is attached for all such purposes.

It seems to us very clear that under the provisions of ch. 114, Laws of 1879, the inhabitants of such territory, which is denominated the county of New, were not clothed

with any of the powers or functions of a county. They had no officers, nor any power to elect any; they could not sue or be sued as a county, nor do any other act or thing which organized counties can do. The fact that the legislature says the territory shall constitute the county of New, does not clothe its inhabitants with the powers of a county; and such declaration, if it could, standing alone, have any effect in constituting them a county, should not be construed to have such effect, when it clearly appears from the whole body of the act that the intention was only to confer upon the future inhabitants of the territory the powers of a county when it should appear that there were 1,000 or more of them. The intent was not to give the inhabitants the powers of a county unless there were 1,000 of them, and not then until that fact was ascertained in the way prescribed in the act.

This act construed according to the plain intent of the legislature, without strict adherence to the letter of the law, no question as to the constitutionality of the act can arise, as both parties admit that the legislature had full power to detach the territory from Oconto and attach it to Shawano; and we are bound to so construe the act to avoid a construction which might render the act unconstitutional.

The rule for construing statutes which are alleged to be in conflict with the constitution is very clearly and forcibly stated by the late Chief Justice RYAN in *Attorney General v. Eau Claire*, 37 Wis. 438. He says: "We owe great deference to the legislative authority. It is our duty to give effect to all its enactments according to its intention, as far as we have constitutional right and power; and to that end it behooves us, as far as we are able, to place such a construction on statutes as will reconcile them to the constitution, and to give them effective operation under the constitution according to the intention with which they are passed. It would be a palpable violation of judicial duty

and propriety to seek in a statute a construction in conflict with the constitution, or with the object of its enactment; or to admit such a construction when the statute is fairly susceptible of another in accord with the constitution and the legislative intention." This just and comprehensive rule is sustained by all well-considered authorities. Many of the authorities are cited in the brief of the learned counsel for the appellant. See, also, *Merchants' Union Barb-wire Co. v. Brown*, 20 N. W. Rep. 434. Construing the statute according to the rule above stated, there is no reason for holding that the act in question is in contravention of any constitutional provision of this state or of the United States.

After the act of 1879 took effect, the territory described in the act as the county of New became a part of the county of Shawano, and consequently the county board of said county had the power to levy and collect county taxes upon the real estate and personal property within such territory.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for further proceedings.