CASE 80—PETITION EQUITY—OCTOBER 27.

# Belknap, &c., v. City of Louisville.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

UNCERTAINTY AS TO BOUNDARY OF CITY—PRACTICAL INTERPRETATION OF STATUTE.—In an action against a city to enjoin the collection of taxes upon the ground that the plaintiff's property sought to be taxed is not within the city limits, the boundary line of the city as fixed by the statute being uncertain, and determinable only by authoritative construction of the statute, a practical interpretation of the statute, adopted and acted on by the lot-owners as well as the city for more than twenty years, should now be given by the court; and especially should this be done in view of the fact that this practical interpretation has been confirmed by legislative recognition.

LEWIS N. DEMBITZ FOR APPELLANTS.

1. The line as claimed by appellants agrees with the calls of the boundary act in every respect.

In construing an act effect must be given to every part of it.
(Dazey v. Killam, 1 Duv., 407.) "Southward," in the absence of
anything to the contrary, means due south.    (Brandt v. Hoffman,
1 Johns., 158; Young v. Leiper, 4 Bibb, 503.)

The words used in surveys and descriptions have always been
treated as technical words belonging to the surveyor's art, and
must be construed according to their technical meaning.    (Gen.
Stats., chap. 21, sec. 17.)

It is only where the words of an act are obscure or doubtful that
the court will resort to contemporaneous construction in order to
arrive at the meaning.   (Collins v. Henderson, 11 Bush, 92.)

2. The boundary of a city can not be changed by the mere acquies-
cence of property-owners.

Nor can a long continued habit or custom either enlarge or
abridge the taxing power of a city.   (Courtney v. Louisville, 12
Bush, 419; Covington Gas Light Co. v. City of Covington, 84
Ky., 94.)

HENRY S. BARKER for appellees.

1. The doctrine of contemporaneous construction as laid down by this
court in Barbour v. City of Louisville, 83 Ky., 95, is directly appli-
cable to this case.

Where the boundary line of a corporation is vague and indefinite
the practical interpretation which has been given the statute by
the citizens of the disputed district in exercising municipal privi-
leges, such as voting, etc., will be adopted by the court.   (2 Dil-
lon on Mun. Corp., 3d ed., p. 212, note to sec. 184; Milne v. Mayor,
13 La., 69; Hamilton v. McNeil, 13 Grattan, 389.)

And especially is this true where this practical interpretation
has been confirmed by legislative recognition.   (People v. Farn-
ham, 35 Ill., 562.)

For a legislative recognition of the boundary claimed by appel
lees in this case, see Lucas' Digest, secs. 17, 18, p. 17; Burnett's
Code, sec. 5, p. 8.

2. Without reference to the doctrine of contemporaneous construction
or the establishment of the boundary in question by user or
acquiescence, it is clear from the face of the statute that the con-
struction given was correct.

JUDGE LEWIS delivered the opinion of the court.

Appellants, about sixteen in number, owners respect-
ively of lots or parcels of land in Jefferson county,
brought this action October 27, 1890, against the city of
Louisville, and D. F. Murphy, city assessor, for a judg-

ment defining and fixing one of the boundary lines of the city so as to exclude and free from municipal taxation their several lots, which they allege are included by a line incorrectly run and claimed by the city, and thus illegally made subject to such taxation, and enjoining Murphy assessing them for taxation.

March 9, 1868, "An Act to extend the boundary line of the city of Louisville," was passed by the Legislature, whereby the city boundary was set out and defined, that part of it now in controversy being thus described : The place where the disputed line begins, the parties agree, is at intersection of a line drawn from Shipp avenue 210 feet south, and one from Third street 210 feet west; and it runs according to call of the statute, "thence south-wardly and parallel with Third street to the south line of the House of Refuge lands, and following the boundary of said land to Shipp avenue."

The House of Refuge land appears to have been at that time a tract of about eighty acres, the title of which was in the city of Louisville, and there is no dispute about the location of the south line thereof. Third street, the general course of which is south from the Ohio river, at date of the act of 1868 terminated at Shipp avenue, the general course of which toward Third street appears from the surveyor's map filed to be southwest; and a line 210 feet south of and parallel with it was by the act made part of the city boundary.

To run the line in dispute strictly according to the call is impossible, because Third street did not then extend south beyond Shipp avenue. But there was at that time a thoroughfare called "Third Street Road," the course of which, however, is about south 10° 50′ west, instead of

the general south course of Third street, and the line claimed by the city of Louisville runs parallel with that road, leaving the several lots of appellants within the corporate limits. But that line does not strike the south line of the House of Refuge land; instead, it extends beyond the southwest corner of that land, and is made to intersect at less than a right angle an imaginary line thereof extending beyond the corner. The line claimed by appellants, if run parallel with a line of Third street extended the proper distance, would strike the south line of the House of Refuge land. But it is argued by counsel of appellees, with some plausibility, that if it had been intended the line should be so run, language clearly indicating such purpose would have been used, as in every other case where a line is made by the statute to extend beyond the termination of an existing street, and parallel with such street extended, the needed expression was used.

The indirect and circuitous course of the city boundary from where it leaves Shipp avenue indicates an intention of the Legislature to include within the city limits the House of Refuge land; yet if the line is fixed as appellants claim, a very considerable part of it will be excluded, while a comparatively small part is outside the line claimed by appellee.

We thus have a condition of uncertainty as to the proper direction one of the boundary lines of a city shall run, necessarily subject to a dispute between the parties interested, and determinable only by authoritative construction of the statute.

We do not see why in such case a practical interpretation, adopted and acted on by the lot-owners as well as

the city more than twenty years, should not now be given by the court. Such has been the doctrine held by other courts. (Milne v. Mayor, 13 La., 69 ; Hamilton v. McNeil, 13 Grat., 389; People v. Farnham, 35 Ill., 562.) In this case it does not clearly appear by whose authority the line was established in pursuance of the act of 1868. But by an act approved March 3, 1870, it was provided that the boundaries of the city of Louisville should remain as then established until changed by law ; and by the same act the general council was required to cause a map to be made of the entire city within the boundary fixed thereby, with streets, avenues, lanes, roads and all other public ways laid out by actual survey, showing the extension thereof to the boundary line with regular squares. Such map was made as required by the act, and according to it the disputed line was laid down as now claimed by appellee, and so as to include the lots of appellants. They have ever since, until this action was commenced, acquiesced in the boundary so defined and fixed, enjoying whatever benefits were thereby conferred and submitting without protest to burdens imposed. Moreover, though there is nothing in the record before us authorizing more than a presumption that the Legislature intended by the act of 1870 to provide that the line, precisely as now claimed by appellee, should remain as then established ; still, by subsequent statutes, the boundary as shown by the city map was recognized as the actual and legal boundary, and by an act passed in 1884 property was directed to be assessed according to maps of the city. There then exists more than mere legislative construction of the act of 1868; for direct legislative authority was, after that date,

given for assessing the lots of appellants for taxation, to enjoin which was the prime object of this action.

We are therefore of opinion the boundary line claimed by appellee has been fully and legally established.

Judgment affirmed.

| 93 | 449 |
| 94 | 420 |

| 93 | 449 |
| 105 | 252 |

| 93 | 449 |
| 135 | 511 |

---

*CASE 81—PETITION ORDINARY—OCTOBER 29.