[Civ. No. 1063. First Appellate District.—December 29, 1911.]

THE PEOPLE ex rel. H. F. BEEDE, Respondent, v. THE TOWN OF ANTIOCH, a Municipal Corporation, Appellant.

BOUNDARIES OF INCORPORATED TOWN OF ANTIOCH—LEGISLATIVE CHANGE —ADOPTION OF OLD SURVEY—EXTENSION OF SHORE LINE—NEW MAP OF OLD SURVEY.—It is held that the boundaries of the town of Antioch, as incorporated and fixed by the supervisors of Contra Costa county February 6, 1872, so as to include three square miles along the shore line of the San Joaquin river, were changed· by the act of the legislature of March 30, 1872, to "define the boundaries of the town of Antioch, and extend the same," which assumed only to extend "the boundary and line of the town of Antioch, in front of said town, as surveyed and laid out by R. Eddy in the year 1866 to extreme low-water mark and low tide," and to provide for a new survey of the town as shown on the map of the Eddy survey, which map included only a small fraction of the incorporated front line, and a very small fraction of the incorporated boundaries.

ID.—CONSTRUCTION OF STATUTE AS TO EXTENSION OF BOUNDARY—INTENTION OF LEGISLATURE.—Though the language of the statute is not as clear and free from ambiguity as it might be, its sections must be construed together, and its title must be looked to as an index to its meaning, and reading the entire act, including the title, it appears that the legislature intended to define the boundaries of the town, and not to extend its northern boundary as incorporated, there being no reference in the act to any incorporated boundary;

nor can it be construed as extending its northern boundary except as shown in the Eddy map, but the northern boundary as shown on that map is treated as its correct boundary, which was intended by the legislature to be changed merely so as to be shifted northerly to the line of low tide.

Id.—Practical Interpretation of Statute—Long Acquiescence by Public—Doubt as to Ambiguity Removed.—Where such interpretation of the statute was practically accepted as correct by the town authorities, and all persons in any way interested in the questions involved, and has been acquiesced in and acted upon by the town and its officers and the public for upward of thirty-eight years, and was never questioned until shortly before this suit was brought to test its right now to tax citizens within its original incorporated boundaries, outside of the boundaries fixed under the act of 1872, such contemporaneous construction, so long acquiesced in, is sufficient to justify the court in resolving any doubt as to the meaning of the ambiguous language employed by the legislature in favor of such long unquestioned interpretation.

Id.—False Recital in Act as to Date of Record of Eddy Map—Identity Unaffected—Disregard of Recital.—Although the act of May 30, 1872, improperly recites that the Eddy map was filed for record at the time the survey was made, whereas it was filed for record two years later, which was four years prior to the date of the act, such recital may be treated as would a false call in a deed, where the description is otherwise sufficient for identification, and may be disregarded. Where the map is otherwise referred to as in existence, and as recorded, and there was only one map of Antioch made by Eddy, the map is fully identified, and the false recital as to the date of its record should be disregarded.

APPEAL from a judgment of the Superior Court of Contra Costa County. R. H. Latimer, Judge.

The facts are stated in the opinion of the court.

B. D. Marx Greene, and Hillyer, Stringham & O'Brien, for Appellant.

U. S. Webb, Attorney General, W. S. Tinning, Titus, Creed & Dall, J. P. Abbott, and A. M. Kidd, for Respondent.

HALL, J.—This is a proceeding in *quo warranto* brought by the attorney general, upon complaint of H. F. Beede, to obtain a judgment determining that the defendant is unlawfully asserting and exercising jurisdiction as a municipal corporation over territory lying wholly outside the corporate

boundaries of said town of Antioch. The primary purpose of the proceeding is to procure a determination as to what constitute the boundaries of said town, and the solution of this question involves the construction and interpretation of the statute entitled "An act to properly define the boundaries of the town of Antioch, and extend the same," approved March 30, 1872, [Stats. 1871–72, p. 725].

The act itself is set forth in the complaint, as well as various facts and proceedings thought to bear upon the question to be determined. Defendant filed a general demurrer to the complaint, which was by the court overruled, and defendant declining to plead further, judgment was entered for plaintiff as prayed for. The effect of this judgment is to determine that the boundaries of the town of Antioch are as the same are shown and delineated upon a certain map of said town, made by one F. A. McMahon in 1884, and recorded in the office of the county recorder of Contra Costa county on the seventh day of April of said year. The appeal is from this judgment, and comes to this court upon the judgment-roll and notice of appeal.

The matters of fact hereinafter stated are from the allegations of the complaint, taken as confessed by the demurrer.

The town of Antioch was first incorporated on the sixth day of February, 1872. The incorporation was accomplished after proceedings duly had for such purpose in pursuance of the act entitled "An act to provide for the incorporation of towns," approved April 19, 1856, [Stats. 1856, p. 198], by an order duly made and passed on the sixth day of February, 1872, by the board of supervisors of Contra Costa county. In this order the boundaries of said town are set forth, and it is recited that they contain a territory of three square miles. The northern boundary of said town called for by this order is the line of ordinary high tide along the south bank of the San Joaquin river.

The act under which the incorporation was effected authorized the incorporation of territory to the extent of three square miles only, and accordingly the order contains the provision that "in case of later or more accurate surveys making said boundaries to contain more than three square miles, the excess to be taken off from the western side of said town."

17 Cal. App.—48

Shortly after the adoption of the said order incorporating said town, the legislature passed the act entitled "An act to properly define the boundaries of the town of Antioch, and extend the same." This act was approved and went into effect March 30, 1872, and is as follows:

"Section 1. The boundary and line of the town of Antioch, on the San Joaquin river, in front of said town, as surveyed and laid out by R. Eddy in eighteen hundred and sixty-six, as per map on file in the office of the County Recorder for Contra Costa county—provided that no land lying between high and low water mark shall be taken for public use except by consent of the owners thereof—is hereby extended to extreme low-water mark and low tide in the San Joaquin river.

"Section 2. The Board of Trustees of said Town of Antioch are hereby empowered and authorized to have the boundaries of said town properly surveyed and located in conformity with the survey and map of R. Eddy as filed in the office of the county recorder for Contra Costa county on the sixth day of August, eighteen hundred and sixty-six."

In the year 1866 one R. Eddy made a survey and map of the boundaries of the town of Antioch, which was filed in the office of the county recorder of Contra Costa county on the tenth day of January, 1868. No map or survey of said town by R. Eddy, or any other person, was filed in the office of said county recorder on the sixth day of August, 1866. A copy of the map made by said Eddy is annexed to and made a part of the complaint, and it is alleged in the complaint that it is the map referred to in the said act of the legislature.

In October, 1883, the board of trustees of said town of Antioch, in pursuance of the provisions of section 2 of said act of the legislature, employed one T. A. McMahon, the county surveyor, to survey and locate the boundaries of said town, in conformity with the survey and map of said Eddy filed in the county recorder's office January 10, 1868, and to survey and locate the northern boundary line of said town in accordance with the provisions of section 1 of said act of the legislature.

Accordingly said McMahon did survey and locate the boundaries of said town in conformity with the said survey and map of said Eddy, and did survey and locate the northern boundary of said town in accordance with section 1 of said

act of the legislature, and in the year 1884 did make and complete a map and plat thereof, which was on the seventh day of April, 1884, accepted by the board of trustees, who did declare the boundaries of said town to be as delineated and shown on said map made by said McMahon.

This map was filed in the office of the county recorder August 12, 1893, and a copy thereof is attached to the complaint and made a part thereof.

It is proper at this point to say that the boundaries of the town of Antioch as originally incorporated by the board of supervisors in February, 1872, include much more territory than is included within the boundaries of said town as the same are laid down upon the Eddy and McMahon maps. We have been furnished by counsel with a diagram showing the boundaries as called for by the order of the board of February, 1872, and as shown on the Eddy and McMahon maps. From this we have prepared and attached to this opinion a diagram which shows the different boundaries contended for, with sufficient accuracy for the purposes of this opinion. On this diagram the lines AB, BC, CD and DA indicate the boundaries according to the original order of the board incorporating the town. The lines EF, FG, GH and HE indicate the boundaries according to the Eddy map, and the lines EFI, IJ, JGH and HE indicate the boundaries according to the McMahon map.

The boundaries in the Eddy and McMahon maps are the same, except that the north boundary, according to the Mc-

Mahon map, is placed farther north than on the Eddy map, so as to coincide with the line of low-water mark, and the east and west boundary lines are extended so as to connect with the north boundary as thus changed.

Returning to the complaint, there are other allegations which show that at no time after the going into effect of the act of the legislature of 1872, until the first day of June, 1910, has the town of Antioch ever claimed or asserted any jurisdiction over territory outside the boundaries as laid down on the said McMahon map, and no person residing outside such boundaries has ever claimed any of the rights or privileges of an elector, resident or taxpayer of said town. All elections held in or by said town have been participated in only by residents within said boundaries. That at an election held in 1890, whereby the town was reorganized as a municipal corporation of the sixth class, only residents within said boundaries took part. In July, 1910, the proper officers of the town of Antioch assessed property within the boundaries of the town as originally fixed by the board of supervisors in February, 1872, but outside the boundaries of said town as shown on the Eddy and McMahon maps, and shortly thereafter this suit was brought to procure an adjudication as to the proper boundaries of said town.

The contention of appellant is that no change was intended or made in the boundaries of said town by the act of the legislature above set forth, other than to extend the limits of the town over its waterfront, that is, to the line of low water. The contention of the respondent, on the other hand, is that the intention of the legislature in enacting such act was to adopt as the boundaries of said town the boundaries thereof as shown on the Eddy map extended northerly to the line of low water. This is the view of the effect of the statute taken by the trial court, and we think it is correct.

It must be confessed that the language of the act is not so apt and clear as it might be. The purpose and scope of the act is indicated by its title: "An act to properly define the boundaries of the town of Antioch, and extend the same."

By the first section, "The boundary and line of the town of Antioch, on the San Joaquin river, in front of said town, as surveyed and laid out by R. Eddy in eighteen hundred and sixty-six as per map on file in the office of the county re-

corder for Contra Costa county . . . is hereby extended to extreme low-water mark and low tide in the San Joaquin river.'' This only purports to extend the line in front of said town as shown on the Eddy map. The line along the river, according to the Eddy map, was and is probably not to exceed one-third as long as the line along said river as fixed by the original order of the board adopted in February, 1872.

The language of this section will not admit of an interpretation that it extended the northern boundary except as shown on the Eddy map. In other words, the northern boundary as thus shown was treated as the correct boundary, and was by the act extended or shifted northerly to low tide line.

By the second section the board of supervisors were authorized to have the boundaries surveyed and located in accordance with said Eddy map. Each of these sections must be construed and read in connection with the other; and as the language of the act is not free from ambiguity, the title of the act may be looked to for such light as it may afford as to the meaning of the act. The title shows that the legislature intended to *define the boundaries* of the town. There is certainly no reference in the act to the boundaries as fixed by the original order of incorporation adopted by the board of supervisors in February, 1872. Reading the entire act, including the title, we think it is reasonably clear that the legislature intended to fix and define the boundaries of the town as they are laid down and shown on the Eddy map, except as to the northern boundary, which was shifted northerly so as to be coincident with the line of low tide of the San Joaquin river.

From the facts pleaded and admitted by the demurrer, it is certain that this is the interpretation that was placed upon the act by the authorities of the town and all persons in any way interested in the question involved. This interpretation has been acquiesced in and acted upon as correct by the town and its officers and the public for upward of thirty-eight years. The correctness of this interpretation has never been questioned until shortly before this suit was brought. Such contemporaneous interpretation, so long acquiesced in by the town, its officers and all other persons who could possibly have an interest in the matter now in dispute, is sufficient to justify the court in resolving any doubt it might have as to the meaning of the ambiguous language employed by the

legislature, in favor of sustaining such long unquestioned interpretation. (26 Am. & Eng. Ency. of Law, 633, 634; 36 Cyc. 1139; *Belknap* v. *City of Louisville,* 93 Ky. 444, [20 S. W. 309] ; *Clark's Run etc. Co.* v. *Commonwealth,* 96 Ky. 525, [29 S. W. 360] ; *People* v. *Farnham,* 35 Ill. 562; *Hamilton* v. *McNeil,* 13 Gratt. (Va.) 389, 402; Lewis' Sutherland on Statutory Construction, secs. 472–474.)

Some criticism is made because the act improperly recites that the Eddy map was filed August 6, 1866. This may be treated as would a false call in a deed, where the description is otherwise sufficient for identification, and be disregarded. (Endlich on the Interpretation of Statutes, sec. 319. See, also, *California Loan etc. Co.* v. *Weis,* 118 Cal. 489, [50 Pac. 697] ; *Palms* v. *Shawano County,* 61 Wis. 211, [21 N. W. 77].) At the time of the passage of the act in question there was a map of the town of Antioch, which had been made in 1866, but not filed in the recorder's office until 1868. This was the only map of said town made by said Eddy. There was no map of said town filed on the date designated in the act. This part of the description was therefore false, but as the other descriptive matters recited were ample to identify the map referred to, the false recital should be disregarded.

The judgment of the court should be affirmed, and it is so ordered.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1912.