[Civ. No. 4392. First Appellate District, Division Two.—March 4, 1924.]

## SAN FRANCISCO–OAKLAND TERMINAL RAILWAYS (a Corporation), Respondent, v. COUNTY OF ALAMEDA, Defendant and Appellant; CITY OF OAKLAND (a Municipal Corporation), Defendant and Respondent.

[1] PUBLIC HIGHWAYS—FEE IN ADJOINING OWNER—RIGHT OWNED BY STATE—DUTY OF AGENT.—Where the fee to land used as a public highway or street rests in the adjoining property owner, and an easement only is acquired, the right lies in the people of the state, and the county or the city is merely the agent or trustee of the state committed to the duty of maintaining the highway for the use of the public.

[2] ID.—RIGHT TO RAILWAY FRANCHISE TAX—INTERPLEADER—CHARACTER OF EASEMENT—JUDGMENT—EVIDENCE—APPEAL.—In an action in interpleader by a street railway company to compel a county and a city within said county to litigate between themselves the question as to which is entitled to the annual payment of percentages upon the gross receipts of the operation of the railway of plaintiff over certain streets located within the municipal boundaries of said city, but which were outside said boundaries at the time of the granting of the franchises for the operation of the railway thereon, where the trial court has rendered judgment in favor of the city, it will be assumed on apppeal, in the absence of any showing to the contrary, that such franchises covered the right to use public highways in which the county did not own the fee, but which were dedicated to public use in the ordinary and usual way.

[3] ID.—ANNEXATION OF TERRITORY—JURISDICTION OVER STREETS—TRANSFER TO CITY.—The county not having had any property in

---

1. See 13 Cal. Jur. 364; 13 R. C. L. 116.

3. Incorporation of territory into municipality as affecting prior rights or street railways as to use of streets, note, 47 L. R. A. (N. S.) 608.

said public highways over which the street railway franchises were granted, they became public streets of the city upon the annexation of the territory where they were located; and the entire jurisdiction and control over such highways for the benefit of the state was thenceforth imposed in the city and all jurisdiction of the county in respect thereto ceased with the annexation.

[4] Id.—Railroad Franchise—Extent of Right.—The right which the grantee of a street railroad franchise obtains is more than the mere right to operate a railroad.

[5] Id.—Construction of Annexation Act—Payment of Railroad Franchise Tax to City.—The language of the act of 1889 (Stats. 1889, p. 358) to the effect that, when the annexation is complete the annexed territory shall be "to all intents and purposes a part of such municipal corporation," is broad enough to support the conclusion that the supervision and control of all public highways within the annexed territory passes from the county to the municipality; and as the percentage upon the gross receipts collected under the franchises is a fee for the supervision and control of the street railroads operating on the public streets, it is reasonable to assume that the state intended that this percentage should be paid to its new agency.

[6] Id.—Right to Collect for Use of Streets—Transfer to City—Impairment of Contract Obligation.—The franchises in question, having been granted after the enactment of the annexation statute, must be deemed to have been made in contemplation of its terms; therefore, the transfer of the supervision and control of the streets in the annexed territory from the county to the municipality, which carried with it the right to collect charges for the use of the streets, did not constitute the impairment of the obligation of the contract whereby the street railway company agreed to pay a given percentage of its gross receipts to the county.

(1) 29 C. J., p. 542, sec. 257; 28 Cyc., p. 846.   (2) 4 C. J., p. 737, sec. 2666.   (3) 28 Cyc., p. 837.   (4) 36 Cyc., p. 1375.   (5) 28 Cyc., p. 837.   (6) 12 C. J., p. 1015, sec. 641 (1926 Anno.); 28 Cyc., p. 837.

APPEAL from a judgment of the Superior Court of Alameda County.   A. B. McKenzie, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

Ezra W. Decoto, District Attorney, Frank Mitchell, Jr., Ralph E. Hoyt, and Carlisle C. Crosby, Deputies District Attorney, for Appellant.

Leon E. Gray, City Attorney, and Markell C. Baer, Assistant City Attorney, for Defendant and Respondent.

Morrison, Dunne & Brobeck for Plaintiff and Respondent.

NOURSE, J.—The San Francisco-Oakland Terminal Railways commenced this action in interpleader to require the county of Alameda and the city of Oakland to litigate between themselves the question as to which one was entitled to the annual payment of percentages upon the gross receipts of the operation of street railways over certain streets now located within the municipal boundaries of the city of Oakland. The railways are operated over these streets by virtue of four franchises granted to the predecessors of the plaintiff railroad corporation by the board of supervisors of Alameda County. The first franchise was granted by ordinance of the supervisors adopted July 10, 1893. The other three franchises were granted in accordance with the terms of the Broughton Act (Stats. 1905, p. 777) in May, 1907; December 1907, and May, 1909, respectively. All four franchises granted the right to construct and operate street-car lines over public highways within unincorporated territory in the county of Alameda. All were to run for a period of fifty years each and all called for the payment to the county of Alameda of a percentage upon the gross receipts derived from the operation of the roads. On December 8, 1909, after all the franchises were in full operation, all that portion of the territory of the county of Alameda which was covered by the franchises was annexed to and became a part of the municipal corporation of the city of Oakland in accordance with the annexation statute of 1889. (Stats. 1889, p. 358.) Following the annexation proceedings and at all times thereafter until the year 1921 all percentages collectible under the franchises were paid to the city of Oakland. Prior to June 30, 1921, the county of Alameda demanded that all payments becoming due under the franchises on June 30, 1921, be paid to the county instead of the city of Oakland. Thereupon the San Francisco-Oakland Terminal Railways, the holder of the franchises, commenced this suit in interpleader to determine to whom said payments should be made. The city of Oakland and the county of Alameda joined issue therein and judg-

ment was rendered in favor of the city of Oakland, from which judgment the county of Alameda prosecutes this appeal.

The appellant insists that inasmuch as each franchise is a contract which provided for the payment of the percentages to the county as an original contractor, the right to receive such payment is a property right and that the obligation under the contract cannot be impaired by the legislature through the annexation proceedings. On the other hand, the respondent argues that the percentage is merely a toll or charge in the nature of a rental exacted as a consideration for the privilege of using the highways and that the right to collect the percentage lies in the public agency upon which is imposed the burden of supervision and control of the highways. The appellant insists that the annexation of the unincorporated territory to the city of Oakland did not work a transfer of the property of the county in the absence of express legislative declaration. The respondent insists that the legislative intention to do this must be inferred from the general statutes which provide for the supervision and control by the city of the public highways which lie within the territory annexed and the consequent denial of such supervision and control on the part of the county.

Appellant relies upon the rule that where two political corporations change their boundaries, in the absence of any statute on the subject, the old corporation retains all the property rights and privileges which it had, except as to such property as is physically situated within the territory going to the new corporation. For the purposes of this opinion we need not quarrel with the rule as stated, but there are so many exceptions to it that we cannot see its application here. It is sufficient to say that it is a matter of intention and that, generally, each case must stand upon its own facts as showing the intention of the parties. If, for instance, a county owns and operates a public hospital in territory which is thereafter annexed to a municipal corporation, it would not be reasonable to say that title to the hospital passed to the municipality. It has been said that what property the county holds it holds in trust for the benefit of the state. (*Reclamation District* v. *Superior Court,* 171 Cal. 672, 679 [154 Pac. 845].) The state may, therefore, provide for such disposition of its property as will best suit the

public welfare. It becomes necessary, therefore, to determine what, if any, property rights are involved in this proceeding.

The case is presented on the theory that the franchises covered the right to operate street-car lines "over certain *streets* within unincorporated territory of the County of Alameda." Strictly speaking, the word "street" relates to a public way within a municipality only. A public way over unincorporated territory of a county is generally referred to as a highway or road. From the transcript it appears that in the franchises the words "public roads," "highways," and "routes" are used. A public road or highway through unincorporated territory is generally a public way dedicated to the public use but not owned as such by the county. Generally speaking, the same applies to a public street within a municipality. The exceptions in both instances are where highways or streets are obtained in fee by the county or the city through public or private grant. [1] In most cases the fee to the land rests in the adjoining property owner and the public holds an easement for the use. Where an easement only is acquired, the *right* lies in the people of the state and the county or the city is merely the agent or trustee of the state committed to the duty of maintaining the highway for the use of the public. [2] In the absence of any showing to the contrary, we may assume, in support of the judgment, that these franchises covered the right to use public highways in which the county did not own the fee, but which were dedicated to public use in the ordinary and usual way.

[3] Thus, in so far as it concerns the public highways over which the franchises were granted, the county had no property to lose and these highways became public streets of the city of Oakland upon the annexation of the territory where they were located, at least when so declared to be by the city authorities. In any event, the entire jurisdiction and control over such highways for the benefit of the state was thenceforth imposed in the city and all jurisdiction of the county in respect thereto ceased with the annexation.

[4] The right which the grantee of a street railroad franchise obtains is more than the mere right to operate a railroad. As said by Mr. Justice Shaw in *San Francisco etc. Ry. Co.* v. *Scott,* 142 Cal. 222, 228 [75 Pac. 575, 581] : "The

right which a street railroad obtains from the city to lay its track and operate its road on a street, on the contrary, is the most valuable part of its franchise. It carries the obligation to serve the public in the use of the street, and is in furtherance of the original use.'' The state has been zealous to insure that this obligation to serve the public in the use of the street shall be protected and enforced by the public agency having control over the streets. All these franchises were conditioned upon this power of supervision and control, and, as the highways covered by these franchises are the property of the state, the state is interested in enforcing the obligations of service to the public under the franchises.

The gross percentage charge exacted under the franchises is in the nature of a toll or rental for the use of the streets covered by the franchises. In *Tulare County* v. *City of Dinuba,* 188 Cal. 664, 670 [206 Pac. 983, 985], the supreme court say: ''The gross receipt charge under the Broughton Act is neither a tax nor a license, but is obviously a toll or charge which the holder of the franchise undertakes to pay as part of the consideration for the privilege of using the avenues and highways occupied by the public utility.'' Primarily this charge would go to the state as the owner of the highway. But the state has chosen to award it to the public agency upon which is imposed the burden of enforcing the obligations under the franchise.

[5] The act of 1889 (Stats. 1889, p. 358) provides that when the annexation is complete the annexed territory shall be ''to all intents and purposes a part of such municipal corporation.'' This language is broad enough to support the conclusion that the supervision and control of all public highways within the annexed territory passes from the county to the municipality. As the percentage upon the gross receipts collected under the franchises is a fee for the supervision and control of the street railroads operating on the public streets, it is reasonable to assume that the state intended that this percentage should be paid to its new agency.

[6] The question of the impairment of the obligation of a contract is not involved. The franchises were all granted after the enactment of the annexation statute and must be deemed to have been made in contemplation of its terms. The state, through the annexation statute, has trans-

ferred the supervision and control of the streets from the county to the city. This transfer carries with it the right to collect charges for the use of the streets. An assignment of the rights of the grantor has thus been effected by operation of law. This result is wholly consistent with the annexation statute in contemplation of which the contracts were executed.

It is also argued that the county has lost whatever claim it might assert to the percentages through the acquiescence of its officials in the collection of payments by the city over a period of eleven years. We do not favor the doctrine of acquiescence, or estoppel, as applied to a situation of this kind. There is much respectable authority holding that public officials and public agencies cannot alienate public rights by mere failure to assert such rights in behalf of the public which they represent.

It is also said that the doctrine of departmental construction should be applied and *People* v. *Town of Antioch,* 17 Cal. App. 751, 757 [121 Pac. 945], is cited. But, inasmuch as the question before us demands an interpretation of the legislative intention in the enactment of the statutes involved, it would be unreasonable to hold that the legislature is bound by the interpretation placed upon its acts by the officials of one county without, at least, some showing that such interpretation was brought to the notice of the legislature either directly or indirectly.

We conclude that when the franchises were granted the county was merely acting as the agent of the state; that the gross receipts charge was exacted as a toll for the use of the state's public highways; that when the supervision and control of these highways was transferred to a new state agency, it carried the benefits as well as the burdens, including the right to collect and retain these charges. Accordingly, the county has no enforceable property right growing out of the franchises.

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 1, 1924.

All the Justices concurred.