CENTRAL & PACIFIC IMPROVEMENT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT [1]

Docket No. 68317. Promulgated October 29, 1935.

*Herschel B. Green, Esq.*, for the petitioner.
*I. Graff, Esq.*, for the respondent.

#### OPINION.

ARNOLD: This appeal is for the redetermination of a deficiency asserted by the respondent in income tax for the year 1930 in the amount of $16,109.42. It is alleged that the respondent erred in determining a profit from the involuntary conversion of certain property belonging to the petitioner. The facts are stipulated.

The petitioner is a corporation organized under the laws of the State of California and has its principal place of business at 123 West Washington Boulevard, Los Angeles, California.

During the month of November 1913 petitioner, at a cost of $282,-497.72, acquired fee title to a certain parcel of real estate in Los Angeles, California, which is bounded on the north by Eighteenth Street, on the west by Hill Street, on the south by Washington Boulevard, and on the east by an alley, the lot being 484.01 feet on the north, 349.35 feet on the west, 486.60 feet on the south, and 321.59

---

[1] Reversed. See 34 B. T. A. 208.

feet on the east, less a corner on the southwest corner of Hill Street and Washington Boulevard, being 120 feet on Hill Street and 150 feet on Washington Boulevard.

During the year 1930 the city of Los Angeles by proper legal proceedings opened up Broadway Street, a public thoroughfare, and condemned a right of way through said lot owned by the petitioner running from Eighteenth Street to Washington Boulevard, the strip condemned being 88.07 feet in width on Eighteenth Street and 88.42 feet in width on Washington Boulevard. In the same year the city of Los Angeles by proper legal proceedings also condemned a portion of said lot in so far as the lot extended along Washington Boulevard to the extent of 20 feet in depth along the entire side of the lot. A special improvement district was created, and the condemnation and improvements hereinafter mentioned were part of its work.

In the year 1930 the city of Los Angeles, by order of court, awarded petitioner for the land taken from it in the condemnation proceeding the sum of $203,271.88. Petitioner received out of the award only $34,321.86 in cash and the balance was applied as a credit on the assessments hereinafter referred to. The cost to the petitioner of the land taken in the condemnation proceeding was $72,357.29.

In the year 1930 the city of Los Angeles levied special assessments against petitioner on the remaining land owned by it in the above described parcel for the work of opening, widening, paving, and lighting in said improvement district in the sum of $155,164.28.

In the year 1931 the city of Los Angeles levied special assessments against petitioner on the remaining land owned by it in the above described parcel for the work of opening, widening, paving, and lighting in said improvement district in the sum of $8,057.30, which sum was paid by petitioner in the year 1931.

In the year 1930 the city of Los Angeles levied a special assessment against other property owned by the petitioner in said improvement district for the work of opening, widening, paving, and lighting in the district in the sum of $13,785.74. No part of the property with respect to which the assessment of $13,785.74 was levied was taken by the city of Los Angeles nor was any award made with respect thereto.

In 1930 the petitioner paid the special assessments mentioned, aggregating $168,950.02, by the city of Los Angeles withholding that sum from the award of $203,271.88.

Petitioner did not sell, exchange, or otherwise dispose of the above described property in 1930, except as stated above.

The petitioner had the right either to collect its awards in full and permit the special assessments to go to bond payable over a

period of years, or to apply the awards against the special assessments and receive the balance due. It chose the latter method.

The improvement district here concerned was very extensive. There were a great many property owners in the improvement district who had no property taken, but were required to pay special assessments.

In determining the deficiency here in question the respondent treated the entire award as income and computed the taxable gain by deducting therefrom the amount of $72,357.29 as the cost of the property taken.

The petitioner contends that, since the assessments were offset against the awards, the only income received by him in 1930 from the transaction was $34,321.86, which was further reduced by $8,057.30, the special assessment levied in 1931, and, as a consequence, all of the proceeds of the property involuntarily converted was expended in the acquisition of other property similar or related in service or use except $26,264.55, which is less than the cost of the property taken.

Petitioner further contends that, inasmuch as the award received was offset against and to the extent of the assessments levied for benefits, there arose simultaneously with the payment a new basis of cost for the determination of gain or loss. If either of these contentions is true there was no taxable gain for the year before us.

The amount of the award withheld in 1930 by the city of Los Angeles in payment of the special assessment levied against the petitioner for the purpose of opening, widening, paving, and lighting in the improvement district was constructively received by petitioner in that year. *Washington Market Co.*, 25 B. T. A. 576; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine R. R.*, 279 U. S. 732; *Carrano* v. *Commissioner*, 70 Fed. (2d) 319. Therefore the entire award of $203,271.88 was received by petitioner in the taxable year.

The underlying principle of special benefit assessments is that the property upon which they are imposed is benefited by such improvements. *Norwood* v. *Baker*, 172 U. S. 269. Such assessments are not allowable as deductions under the provisions of section 23 (c) (3) of the Revenue Act of 1928, and may not be recovered by ratable annual deductions measured by the depreciation annually sustained by the public improvement in question. *F. M. Hubbell Son & Co.*, 19 B. T. A. 612; affd., *Hubbell Son & Co.* v. *Burnet*, 51 Fed. (2d) 644. They are payments in addition to the cost of the property subjected to the assessment and may be added to such cost in determining the base on a subsequent sale. Cf. *Champion Coated Paper Co.*, 10 B. T. A. 433; *Hubbell Son & Co.*, *supra; Carrano* v. *Commissioner*, *supra*.

In *Carrano* v. *Commissioner*, *supra*, the court had before it the question as to when a benefit assessment which was paid in the same manner as that in this proceeding, i. e., by the city withholding the amount of the assessment from the award, was to be brought into the reckoning.

In holding that the payment of the award by the municipality should be treated as immediately added to the original basis the court, speaking through Judge L. Hand, said:

\* \* \* On the other hand, it appears to us that this payment should be treated as immediately added to the original " basis." Although the assessment was not an added cost until paid, it became cost at the moment when it was set off against the award. Receipt and payment were simultaneous; it is as false to say that the award was paid before it was expended, as that it was expended before it was paid.

\*      \*      \*      \*      \*      \*      \*

In this instance the " gain " in dispute could arise only on the hypothesis that so much of the award as paid the assessment was received before the assessment itself was paid. This was demonstrably not the case; it was received at the same time. Thus it does not affirmatively appear to be a taxable " gain " at all, and the taxpayer wins. Moreover, this is the direct and natural way to look at the transaction. The taxpayer has " gained " only what he has received above his cost; so far as his award has been cancelled by the assessment, it is not a " gain " at all, it is instantly absorbed by a new cost which arises and is paid without allowing him even a momentary possession of the " gain."

In *Wolf* v. *Commissioner*, 77 Fed. (2d) 455, a similar situation was considered. In its opinion the court said:

\* \* \* However that may be, it is clear that the entire proceeding for the opening of a street is one proceeding and the result should be treated as an entirety. This was the view of the Supreme Court of California expressed in considering a somewhat similar situation under the same street opening act in the case of *Spring Street* v. *City of Los Angeles*, 170 Cal. 24, wherein a parcel of land was awarded $20,000 and assessed $20,115.20 to pay for the property thus taken. This transaction was treated as a unit for the purpose of determining whether or not there had been an infringement of the constitutional rights of the owner of the land. \* \* \*

The parties in neither the *Carrano* case, *supra*, nor the *Wolf* case, *supra*, asked that the assessment be apportioned between the portion condemned and the portion remaining. In the *Carrano* case the figures were not at hand with which this could be done and the court reserved its judgment on that point. In the *Wolf* case such an apportionment might have been made, but the court disregarded that fact and decided the case without making any apportionment.

It does not appear that the city of Los Angeles purchased any of petitioner's property in 1930, but only condemned and took a right of way through it and along one side for a public thoroughfare. It is the general rule in such proceedings that the fee to the property taken remains in the owner, subject to the public easement, and in the

absence of evidence to the contrary title to the fee is presumed to be in the abutting land owner, cf. 29 C. J., sec. 257; 44 C. J., sec. 3666. This is the rule in California, Deering's Civil Code of California (1927), sec. 831, and the public acquired only an easement in the part taken, cf. *San Francisco-Oakland Terminal Rys.* v. *Alameda County*, 66 Cal. 77; 225 Pac. 304. Under such circumstances the award for the taking of the property for public use extends to the whole parcel and the assessment, being a part of the same transaction and simultaneously paid, increases the cost basis of the whole. In this view of the matter no gain can arise unless the award exceeds the cost basis thus established.

We conclude there was no taxable gain from the transaction here in question in 1930, and petitioner's contention that there was no deficiency for that year is approved.

This conclusion makes it unnecessary to consider petitioner's contention that a part of the proceeds of the property involuntarily converted was expended in the acquisition of other property similar or related in service or use.

*Decision will be entered for the petitioner.*