HERBERT and others, Respondents, vs. CITY OF RICHLAND CENTER, Appellant.

*March 31—May 5, 1953.*

For the appellant there was a brief by *James G. Robb,* city attorney, and *Brindley & Brewer* of Richland Center, and oral argument by *Mr. Robb* and *Mr. F. L. Brewer.*

For the respondents there was a brief by *Black & Fowell* of Richland Center, and oral argument by *O. D. Black.*

BROWN, J.    The city's refusal to restore the bridge rests on the proposition that its duties in respect thereto are only those imposed on it by the contract by which it acquired the bridge and, that contract being void because of the interest which one of the aldermen had in it, performance of the contract obligations cannot be compelled. It is true that the complaint states that the action is brought for a judicial determination of the city's liability to make the bridge again "available for public use in compliance with the conditions under which the original bridge was given to said city."

Sec. 370.01 (12), Stats., relating to construction of statutes, provides the word "highway" may be construed to "include all public ways and thoroughfares and all bridges upon the same." A city street is a public highway. 25 Am. Jur., Highways, p. 342, sec. 7. Within the city the words "street" and "highway" are interchangeable. It is the city's duty to keep its public streets, ways, and thoroughfares, which includes bridges which carry such thoroughfares across streams, in repair and the legislature has placed this responsibility specifically on the city board of public works. Sec. 62.14 (6). In *State ex rel. Wisniewski v. Rossier* (1931), 205 Wis. 634, 639, 238 N. W. 825, we referred to the duty as a "clear" one.

The alleged contract did no more than recite obligations which the city incurred as a matter of law if it accepted the gift of the bridge. The evidence demonstrates without any contradiction that the gift was accepted and for more than thirty-five years the bridge has been used as a public highway

or thoroughfare. The city ordinances have regulated its use. The city has gone beyond the conditions of the so-called contract and has not only kept up and maintained the bridge but has improved it, notably by putting wire fencing along its sides to make it safer for the school children who used it and by installing electric lights upon it, integrated with the city street-lighting system. The conclusion is irresistible that the city made the bridge a part of its street system and, quite apart from any contract, the legal duties of the city in respect to its streets have attached. These duties are not to be ignored because a supposed contract reiterated them.

When the bridge was washed out the city salvaged some of the wreckage and used it in other municipal construction and sold the useless debris for junk. The trial court considered the city was estopped to assert that the bridge was a private one which had never become the city's property, citing, among others, 25 Am. Jur., Highways, p. 344, sec. 10, and *Houfe v. Fulton* (1874), 34 Wis. 608. While we consider the estoppel solution perfectly feasible, in our own view the facts go farther than estoppel and constitute definite proof that regardless of the contract the city accepted the bridge and improved, regulated, and maintained it not in performance of any contract obligation but in performance of its "clear duty" to maintain its streets (highways) and keep them in repair. Accordingly, it is the city's obligation to replace this portion of the public highway which has been washed out in the same manner that it would be obligated to repair or replace any other portion of its streets which had been destroyed.

*By the Court.*—Judgment affirmed.