[Sac. No. 6472.   In Bank.   June 28, 1956.]

WILLIAM FISCHER, Respondent, v. COUNTY OF SHASTA et al., Appellants.

Laurence J. Kennedy, Jr., and Randall J. Presleigh, District Attorneys (Shasta), Robert H. Gerdes, William S. Love and Chenoweth & Leininger for Appellants.

Robert E. Reed and Warren P. Marsden, Counsel, Department of Public Works, State of California, and William M. Siegel as Amici Curiae on behalf of Appellants.

Daniel S. Carlton, Carlton & Shadwell and Robert A. Haughwout for Respondent.

McCOMB, J.—Plaintiff instituted an action in the superior court seeking (1) to enjoin defendant county and the board of supervisors from maintaining street lighting in Shasta County Road Maintenance District Number 1, and (2) to have declared illegal a contract between defendant county and defendant Pacific Gas and Electric Company providing for the furnishing of lights in certain unincorporated communities of Shasta County.

The superior court found in favor of plaintiff and granted the relief prayed for. From this judgment defendants appeal.

The record discloses the following facts: Three communities are involved, the town of Central Valley, Project City and Pine Grove. Pine Grove is a subdivision adjacent to Highway Number 99, while Project City is at the junction of Highway Number 99 and Highway Number 209, which latter highway extends to Shasta Dam. Central Valley constitutes a town on and adjacent to Highway Number 209 and is between Highway Number 99 and Shasta Dam but a short distance from Project City.

Because of the necessity of lighting these communities along the two state highways and the county highways leading thereto, street lights were installed by the Pacific Gas and Electric Company, hereinafter referred to as the "power company," and were maintained by voluntary contributions for a considerable period before the creation of the maintenance district.

The voluntary financing was unsatisfactory and it was deemed necessary to continue the street and highway lighting of the above-mentioned communities. Therefore, defendant board of supervisors established the Shasta County Road Maintenance District Number 1 under the provisions of section 1550.1 of the Streets and Highways Code.*

---

*Section 1550.1 of the Streets and Highways Code reads as follows: "The board of supervisors may form special road maintenance districts in subdivided areas of the county wholly outside of incorporated cities. Formation of said districts may be ordered by the board of supervisors when in their opinion additional road funds are necessary to properly maintain roads in specific areas of the county. Such districts shall be formed by order of the board setting forth the boundaries thereof, and in no case shall a special road maintenance district be formed where the boundaries of said district cause it to include lands within more than one county road district as formed under Section 1020 of this Streets and Highways Code. Such district shall be in existence until the board shall by its order discontinue such district. If such a district is to be formed, the board of supervisors shall set a date for a hearing on said formation. Such hearing shall not be held in less than three weeks after the date of the order for the hearing, and prior to the date of the

After the maintenance district was formed, the board of supervisors on April 2, 1953, entered into a contract with the power company to provide 32 lights in the district, to be paid for by the county of Shasta. The property owners in the district provided the maintenance fund by special taxes.

Approximately 19 of the 32 lamps here involved are located along or upon the two state highways. The remainder are on the streets or connecting county highways near the intersections thereof with the state highways. These 19 lights were installed under written encroachment permit consents of the Division of Highways.

The questions presented for determination are:

*First*: *Can a county, through its board of supervisors, use the special road maintenance district procedure provided in section 1550.1 of the Streets and Highways Code for operating and maintaining a lighting system which embraces a state highway as well as county highways and streets in unincorporated communities within the county?*

This question must be answered in the affirmative. The board of supervisors of a county may form a special road maintenance district in subdivided areas of the county wholly outside of incorporated cities. (Sts. & Hy. Code, §§ 1550.1, 1550.2, 1550.3) The lighting of streets is included within the word "maintenance" as used in section 1550.1 of the Streets and Highways Code. Section 27 of the code reads in part as follows: "As used in the general provisions and in Divisions I and II of this code, 'maintenance' includes: . . . (e) Such illumination of streets, roads, highways and bridges which in the judgment of the body authorized to expend such funds is required for the safety of persons using the said streets, roads, highways and bridges."

Plaintiff urges, however, that the word "road" used in section 1550.1 of the Streets and Highways Code does not include a "state highway." This contention is contrary to the definition of the word as found in numerous authorities. The word "road" is a generic term which includes highways, streets, public ways and thoroughfares.

hearing, a notice of said hearing shall be published twice in a newspaper of general circulation in the area, and, in addition, at least three notices shall be posted in public places within the proposed district. At the hearing, protests may be heard on the proposed formation of such district. It shall be within the power of the board of supervisors to determine from the results of the hearing the necessity for said special road maintenance district, and, if it be deemed necessary, the district may be formed as hereinbefore provided."

Webster's New International Dictionary (2d ed. 1937), page 2155, defines the word "road" as: "A place where one may ride; an open way or public passage for vehicles, persons, and animals; . . . *Road* is generally applied to a highway outside of an urban district, as distinct from a *street*, which is a highway in an urban district."

Black's Law Dictionary (4th ed. 1951), page 1491, reads: "Road. A highway."

Corpus Juris Secundum (1944), volume 39, Highways, page 915, reads: "The term [highway] has been held synonymous with 'public road' and 'street.'"

In *B. & H. Transportation Co.* v. *Johnson,* 122 Cal.App. 451 at 453 [10 P.2d 506], the court said: "Roads and highways are generic terms embracing all kinds of public ways, such as county and township roads, streets, etc."

In *San Francisco-Oakland Terminal Rys.* v. *County of Alameda,* 66 Cal.App. 77 at 81 [225 P. 304] (hearing denied by the Supreme Court), the court said: "A public way over unincorporated territory of a county is generally referred to as a highway or road."

In *People* v. *Odom,* 19 Cal.App.2d 641 at 650 [8] [66 P.2d 206], the court, quoting with approval from the Vehicle Code, said: "'Street' or 'highway' is a way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel."

To the same effect are: *Johnston* v. *Wortham Machinery Co.,* 60 Wyo. 301 [151 P.2d 89 at 91 [2]] ; *Stedman* v. *Inhabitants of Southbridge,* 34 Mass. 162 at 165; *Barber Asphalt Paving Co.* v. *Headley Good Roads Co.,* 283 F. 236 at 237 [1] ; *Herbert* v. *City of Richland Center,* 264 Wis. 8 [58 N.W.2d 461 at 462 [1, 2]] ; *Inhabitants of Windham* v. *Cumberland County Comrs.,* 26 Me. 406, 409; *Strange* v. *Board of Comrs. of Grant County,* 173 Ind. 640 [91 N.E. 242 at 247] ; *Shannon* v. *Martin,* 164 Ga. 872 [139 S.E. 671 at 672, 54 A.L.R. 1246] ; *Washington County, Neb.* v. *Williams,* 111 F. 801 at 808 [49 C.C.A. 621] ; *People* v. *Commissioners of Buffalo County,* 4 Neb. 150 at 158.

In view of the foregoing, the conclusion is inescapable that the word "road" as used in section 1550.1 of the Streets and Highways Code should be given its ordinary meaning to include all highways, county or state. ▮ It is presumed that the Legislature knew the meaning of the language used in the statute and used it advisedly. (*Anderson* v. *I. M. Jameson Corp.,* 7 Cal.2d 60 at 67 [59 P.2d 962].) Therefore,

when the Legislature used the term "roads" in section 1550.1 and used the term "county highways" in sections 1553 and 1554, which sections are contained in chapter 7, division 2, of the Streets and Highways Code, the presumption is that the Legislature used these terms advisedly and intended that each term should be given a different meaning. The presumption is not, as plaintiff contends, that when the Legislature used the term "roads" it meant county roads only. If the Legislature had intended to limit the application of section 1550.1 to "county roads" it would have so stated and not used the word "road," which includes every character of highway, including a state highway.

*Second: Does the maintenance of street lights on state highways lie exclusively within the jurisdiction of the Department of Public Works?*

This question must be answered in the negative. Plaintiff apparently has abandoned this contention, which appears in his complaint, for in his reply memo submitted to the trial court he concedes that a highway lighting district formed by the board of supervisors under part 4, division 14, of the Streets and Highways Code may maintain street lights on a state highway. On page 1, lines 24-30, he says: "We wish to call to the Court's attention the fact that the Board of Supervisors could unquestionably and beyond dispute have contracted with defendant Pacific Gas & Electric Co. for lighting State Highways 209 and 99 within the Central Valley and Project City areas, if they so wished, by specifically creating a highway lighting district in accordance with the provisions of the Highway Lighting District Act."

Having conceded that a maintenance district may maintain street lighting and that certain local taxing districts may maintain street lighting on state highways, plaintiff is left with the argument that the wrong local taxing district has been employed—that this particular taxing district may maintain street lights on county highways but not on state highways. This argument is predicated upon reading something into the statute that is not expressed and that was not intended, that is, construing the term "roads" as though it read "county highways."

It does not appear that the language of section 1550.1 of the Streets and Highways Code necessarily limits the use of district funds to roads that are otherwise eligible for county road moneys.

The use of the word "additional" is not a limitation upon

the use of the fund but rather a general description of it. Had the Legislature meant the funds to be purely supplemental, it would have more specifically set forth the limitation.

█ Section 19002 of the Streets and Highways Code expressly provides that the Highway Lighting District Act is merely an alternative procedure for providing street lights. Therefore, it is evident that the board of supervisors had their choice of proceeding under either section 19002 or section 1550.1 of the Streets and Highways Code.

*Gillespie* v. *City of Los Angeles,* 36 Cal.2d 553 [225 P.2d 522], is not in conflict wtih the foregoing conclusion. In that case the court merely held that the city had no duty to maintain traffic signs and signals upon a state highway because the State Department of Public Works has full possession and control of state highways. █ There is nothing in such decision which conflicts with the contention that a special road maintenance district has power to maintain street lights upon a state highway. Such a district has no *duty* to maintain signs, signals or street lights for the benefit of motorists, but it does not follow from this that such a district does not have the *power* to maintain street lights for local benefit if it first obtains a permit from the Department of Public Works, as was done in the present case.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority here has, without any discussion of the comprehensive statutory scheme set up by the Legislature in the Streets and Highways Code, decided that this case must be reversed. There is, in the majority opinion, no discussion of the numerous detailed provisions set forth in the Streets and Highways Code each of which has a specific bearing on what the Legislature intended for each type of public way. The majority has, instead, relied on various dictionary definitions of the word "road," on several California cases which are not in point, and on numerous out-of-state cases without any discussion of the statutory provisions there involved. If California had no Streets and Highways Code and if it were up to this court to decide whether or not the word "road" should be construed to include "state highway," then, and then only, would the majority opinion have any merit. How-

ever, California has a Streets and Highways Code which sets forth in minute detail every conceivable factor having any bearing on any type of public way.

Inasmuch as the majority opinion leaves much to be desired in setting forth the legislative scheme for the acquisition, control, and maintenance of public ways, I consider it my duty to present, at some length, the reason why the majority is in error in its conclusion that the word "road" includes "a state highway."

The factual situation set forth in the majority opinion is correct. The Board of Supervisors of Shasta County, acting pursuant to section 1550.1 of the Streets and Highways Code, formed a maintenance district to light certain parts of two state highways. After the formation of the maintenance district, the board of supervisors entered into a contract with the Pacific Gas and Electric Company to furnish lights on these highways which were located in certain unincorporated areas of Shasta County. Plaintiff objected on the ground that the county improperly proceeded under section 1550.1 of the Streets and Highways Code and that the contract entered into pursuant thereto was illegal and void and should be set aside. With these contentions of the plaintiff, I agree for the following reasons:

Section 1550.1 of the Streets and Highways Code provides that "The board of supervisors may form special road maintenance districts, in subdivided areas of the county wholly outside of incorporated cities. Formation of said districts may be ordered by the board of supervisors when in their opinion additional road funds are necessary to properly maintain *roads* in specific areas of the county." (Emphasis added.)

The question here presented is one of first impression and may be stated quite simply: Whether the word "roads" in the above quoted section includes state highways.

Plaintiff contends that state highways are not included within the word "roads" and that section 19030 of the Streets and Highways Code provides the only method by which such state highways may be lighted other than where the state itself undertakes the maintenance of such lighting facilities. Section 19030 provides that "Any unincorporated town or village of this State may establish a highway lighting district for the purpose of installing and maintaining a street lighting system on public highways, for the better protection of its residents in accordance with the provisions of this part." It is conceded by defendants that this section and those following

it are the *only* ones specifically providing for the lighting of state highways within unincorporated areas, but defendants argue that the word "roads" includes, by implication, state highways, and that section 27(e) defines "maintenance" as including the illumination of such "streets, roads, highways and bridges *which in the judgment of the body authorized to expend such funds is required for the safety of persons using the said streets, roads, highways and bridges."* (Emphasis added.) Plaintiff maintains that the italicized portion of the section just set forth proves his point: That section 24 defines "State highway" as meaning any highway acquired, laid out, constructed, improved or maintained as a state highway pursuant to constitutional or legislative authorization; that section 90 provides that the State Department of Public Works "shall have full possession and control of all state highways . . ."; that section 91 provides that the Department of Public Works "shall improve and maintain the state highways . . ."; and that this court said in *Gillespie* v. *City of Los Angeles,* 36 Cal.2d 553, 559 [225 P.2d 522], that "The State Department of Public Works has 'full possession and control' of all state highways"; that, as a result, the procedure specifically outlined by sections 19000 through 19312, Division 14, Part 4, Chapters 1 through 17, provides the only way in which unincorporated areas may light state highways. These sections, relied upon by plaintiff, require a petition, an election, and a resolution by the board of supervisors before a street lighting district may be formed as distinguished from the procedure set forth in section 1550.1 which was followed by defendants.

Plaintiff's argument is, in brief, that only the State Department of Public Works as "the authorities charged with the maintenance thereof" (concluding paragraph of section 27) has the authority to maintain state highways unless the Streets and Highways Code otherwise provides and that, in this instance, there is an express alternative method provided for in section 19000 et seq. These sections, as heretofore noted, provide for a petition, an election, and a resolution by the board of supervisors before a street lighting district may be formed. Plaintiff correctly contends that when a statute sets forth a certain procedure to be followed, that procedure is exclusive and mandatory (*Gleason* v. *Spray,* 81 Cal. 217 [22 P. 551, 15 Am.St.Rep. 47]; *Blalock* v. *Ridgway,* 92 Cal. App. 132 [267 P. 713]; *Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570]; *County of San Diego* v. *California*

*Water etc. Co.*, 30 Cal.2d 817, 823, 826 [186 P.2d 124, 175 A.L.R. 747]).

It is obvious that the Streets and Highways Code contains a comprehensive plan for the construction, maintenance, operation and control of public roads and ways. This code was first enacted in 1935 (Stats. 1935, ch. 29). It was declared to be an act to establish a streets and highways code, thereby consolidating and revising the law relating to public ways and all the appurtenances thereto. The first 29 sections contain general provisions, definitions and other topics. The code next contains Division 1 which relates to state highways; Division 2 relates to county highways; Division 2.5 relates to city streets. Each division carefully sets forth provisions governing the construction, maintenance, control and possession of the different types of public ways and gives to the several public agencies jurisdiction over the different classifications.

Under "General Provisions," "Highway" is defined in section 23; "Freeway" is defined in section 23.5; "State Highway" is defined in section 24; "County Highway" is defined in section 25. The word "shall" is expressly made mandatory and the word "may" is expressly made permissive. Section 90 provides that the "department [of public works] *shall* have *full* possession and control of all state highways and all property and rights in property acquired for state highway purposes. . . ." Section 91 provides that "The department *shall* improve and maintain the state highways, including all traversable highways which have been adopted or designated as state highways by the commission, as provided in this code." Section 27(e) provides that "maintenance" includes "Such illumination of streets, roads, highways and bridges which in the *judgment of the body authorized to expend such funds is required for the safety of persons using the said streets, roads, highways and bridges.*"

Almost all of Division 1 is devoted to *state* highways. Each state highway is given a route number and each route is specifically described in a separate section. For illustration, section 309 provides "*Route 9*. Route 9 is from: (a) Route 2 near Montalvo to Route 4 near San Fernando. (b) San Fernando to San Bernardino." One entire article of division 1 sets forth the procedure to be followed for county aid for state highways; another article deals with cooperative construction by the counties with the state, of state highways. Still another article deals with cooperation between the

state and federal authorities. Even the most cursory examination of the Streets and Highways Code leads to the conclusion that the legislative intent was to provide for every contingency which might occur and that, in the process of so doing, the Legislature was extremely explicit.

Division 9 of the Streets and Highways Code deals with "change of grade" and "grade districts" and "vacation of city streets." In this division, section 8116 is of interest in that it enumerates the types of public way which may be dealt with by the board of a county as county roads *or* highways, *or state* highways, *or* city streets. If the word "road" included all of these, why should the Legislature have wasted time and effort in enumerating them? Section 8145 also itemizes the different types of public way as "city streets, county roads or highways, state highways." It seems very apparent that the Legislature considered a road as something entirely different from a county highway or a state highway or a city street and that it went to great lengths to be specific in each division of the Streets and Highways Code. Division 10 deals with the Improvement Bond Act of 1915 and in section 8570 we find the same specific enumeration of the different types of public ways. A further illustration of the exactitude with which the Legislature set forth its over-all plan for all public ways is found in Division 1 which is entitled "Department of Public Works." Section 145 provides that "The State Engineer is authorized to lay out and construct local service *roads* on and along any State Highway. . . ." This illustration is but one of many which could be given to prove that when the Legislature meant "road" it said "road" and when it meant "highway" it said so without equivocation and without leaving what it meant to speculation. Under division 3, chapter 3, entitled "Highway Users Fund" we find that the moneys payable to the counties must be apportioned in certain definite ways. For example, section 2114 provides that "there shall be paid to each county eligible thereto an amount computed monthly as follows: The number of miles of maintained county *road* in each county shall be multiplied by twenty-five dollars ($25). . . ."

Part 1 of division 16 is entitled "Highway Districts." Not one single section uses the word "road" or "roads." The only words used are "highways" and "public highways." Part 2 of division 16 is entitled "Boulevard Districts." Section 26114 reads as follows: "For the purposes of this part the district may take over, control, operate, and use

in whole or in part any *county road or public highway* and may construct any boulevard in whole or in part, over, along, or upon all or any part of any county road or public highway. . . ." If the Legislature had intended the word "road" to include "State highway," why should it have entitled the above section "Use of county road *or* public highway?"

Part 3 of division 16 is entitled "Bridge and Highway Districts" and again, the word "road" is not used in any of the sections in the division. Division 17 is entitled "Toll Bridges, Toll Ferries and Toll Roads." Chapter 2 of this division deals with toll *highways*; chapter 3 deals specifically with toll *roads*.

Division 14, part 1, is entitled *"Street* Lighting Act of 1919" and refers to the lighting of *streets* within a *city*; part 2 is the *"Street* Lighting Act of 1931" and also deals with the lighting of *streets* within a *city*; part 3 is the *"Municipal* Lighting Maintenance District Act of 1927" and deals with the lighting of streets within cities and municipalities. Part 4 is the *"Highway Lighting District Act"* and refers to the lighting of (§ 19008) "any highway, county highway, State highway, public streets, avenue, alley, park, parkway, driveway, or public place, in any county, or unincorporated town or village." Again, the Legislature has been specific and has enumerated the various types of public ways which might need lighting, and set forth in succeeding sections the precise method by which it might be accomplished.

Division 14 is entitled "The Highway Lighting District Act" and specifically notes that it provides for an "alternative" method for making the improvements authorized "by this part" (§ 19002). This division sets forth the procedure whereby unincorporated areas may light state highways (§§ 19008 and 19030) when the state, as the body authorized to make such improvements (§§ 90 and 91) has not seen fit to do so. Section 19008 defines "Public highway" as including any highway, county highway, or "State highway," thereby leaving nothing to implication. The balance of the sections in the division contains an exact and comprehensive plan for accomplishing what the division permits—*the formation of a highway lighting district by unincorporated areas to light state highways*. It is elementary that when the Legislature has spoken so clearly this court should not, by implication, read "state highways" into the word "roads" in order to approve the action taken here by the Board of Supervisors of Shasta County in acting pursuant to section

1550.1 of the Streets and Highways Code which does *not* mention state highways.

It is, I believe, noteworthy that as authority for the "inescapable" conclusion that the word "road" includes a "state highway," the majority cites Webster's New International Dictionary, Black's Law Dictionary, Corpus Juris Secundum, *Johnston* v. *Wortham Machinery Co.*, a Wyoming case which quoted from a Georgia case, *Stedman* v. *Inhabitants of Southbridge*, a Massachusetts case, as well as a case from Maine, and Indiana, and one from Nebraska, and from Wisconsin. We are not informed whether these various states have a comprehensive statutory scheme specifically defining the various types of public ways such as we have here in California.

The majority quotes from *B. & H. Transp. Co.* v. *Johnson*, 122 Cal.App. 451, 453 [10 P.2d 506], that "Roads and highways are generic terms embracing all kinds of public ways, such as county and township roads, streets, etc." This case involved a construction of section 15 of article XIII of the state Constitution which provided for taxation of public person or property transportation for compensation "over any public highway in this state between fixed termini or over a regular route. . . ." The court relying upon section 2618 of the Political Code defined public highways as follows: "In all counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges . . ." came to the conclusion just set forth. It is very interesting to note that section 2618 of the Political Code is now section 25 of the Streets and Highways Code which reads as follows: "*County Highway.* As used in this code, 'county highway' means any highway which is: (a) Laid out or constructed as such by the county. (b) Laid out or constructed by others and dedicated or abandoned to or acquired by the county. (c) Made a county highway in any action for the partition of real property. (d) Made a county highway pursuant to law." It is very obvious, therefore, that this case has no bearing whatsoever upon a present construction of the Streets and Highways Code. Also cited as authority for the proposition that "road" includes "highway" is *San Francisco-Oakland Terminal Rys.* v. *County of Alameda*, 66 Cal.App. 77, 81 [225 P. 304]. This case involved a construction of language used in certain franchises granted to a railroad corporation covering unincorporated territory in Alameda County which was annexed to and became a part of the city of

Oakland. The language quoted in the majority opinion that "A public way over unincorporated territory of a county is generally referred to as a highway or road" was taken from the following paragraph: "The case is presented on the theory that the franchises covered the right to operate street-car lines 'over certain streets within unincorporated territory of the County of Alameda.' Strictly speaking, the word 'street' relates to a public way within a municipality only. A public way over unincorporated territory of a county is generally referred to as a highway or road. From the transcript it appears that in the franchises the words 'public roads,' 'highways,' and 'routes' are used. A public road or highway through unincorporated territory is generally a public way dedicated to the public use but not owned as such by the county. Generally speaking, the same applies to a public street within a municipality. The exceptions in both instances are where highways or streets are obtained in fee by the county or the city through public or private grant. In most cases the fee to the land rests in the adjoining property owner and the public holds an easement for the use. Where an easement only is acquired, the *right* lies in the people of the state and the county or the city is merely the agent or trustee of the state committed to the duty of maintaining the highway for the use of the public. In the absence of any showing to the contrary, we may assume, in support of the judgment, that these franchises covered the right to use public highways in which the county did not own the fee, but which were dedicated to public use in the ordinary and usual way.

"Thus, in so far as it concerns the public highways over which the franchises were granted, the county had no property to lose and these highways became public streets of the city of Oakland upon the annexation of the territory where they were located, at least when so declared to be by the city authorities. In any event, the entire jurisdiction and control over such highways for the benefit of the state was thenceforth imposed in the city and all jurisdiction of the county in respect thereto ceased with the annexation." The court concluded that when the franchises were granted "the county was merely acting as the agent of the state . . . that when the supervision and control of these highways was transferred to a new state agency, it carried the benefits as well as the burdens, including the right to collect and retain these charges." (Emphasis that of the court.) It is apparent that

this case does not stand for the proposition that the word "road" includes "highways." *People* v. *Odom,* 19 Cal. App.2d 641, 650 [66 P.2d 206], involved section 480 of the Vehicle Code. In this case the defendant was charged with wilfully driving a motor vehicle upon a public highway and failing to stop to render aid to an injured person as required by section 482, subdivision (a) of the Vehicle Code. The court said (p. 650): "There is no merit to the contention that there is a fatal variance between the allegation of the information that the accident occurred 'upon a public highway' in Merced County and the proof that the body of the man was found on 'Shaffer Road.' . . . It is immaterial whether the accident occurred on a street in Atwater or on an extension of that street outside of the city limits, termed Shaffer Road. It was called both a highway and a street. Section 81 of the Vehicle Code defines a highway as follows: ' "Street" or "highway" is a way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel.'

"There can be no doubt the accident occurred on a roadway open to the public for the purposes of vehicular travel. There appears to be no variance in that regard."

From this summary of the three California cases used by the majority to prove the point that "road" includes "highway" it can at once be seen without any stretching of the imagination that none of them has the slightest bearing upon a construction of the Streets and Highways Code.

I would affirm the judgment.