Douglas R. MAULER and Judith A. Mauler, Plaintiffs,

v.

BAYFIELD COUNTY, a political subdivision of the State of Wisconsin, and Union Pacific Railroad Company, a foreign railroad corporation, Defendants.

No. 00–C–742–C.

United States District Court, W.D. Wisconsin.

Dec. 4, 2001.

Jon Erik Kingstad, Woodbury, MN, for Plaintiffs.

Richard K. Nordeng, Stafford Rosenbaum, LLP, Madison, WI, for Bayfield County.

Bruce A. Schultz, Coyne, Niess, Schultz, Becker & Bauer, Madison, WI, for Union Pacific Railroad Co.

Frank Remington, Asst. Atty. Gen., Madison, WI, for State of Wisconsin (amicus brief).

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory relief, plaintiffs Douglas R. Mauler and Judith A. Mauler contend that defendant Union Pacific Railroad Company or its predecessors in interest abandoned the right-of-way that traverses their property and the reversionary rights should fall to them. Plaintiffs seek a declaration that the former railroad right-of-way traversing their property is "abandoned," thereby quieting the title to the right-of-way against defendants and vesting it in plaintiffs. Plaintiffs also seek a declaration that the Abandoned Railroad Right of Way Act of 1922, 43 U.S.C. § 912, was repealed by the National Trails System Improvement Act of 1988, 16 U.S.C. § 1248(c). Jurisdiction is present under 28 U.S.C. § 1331.

Presently before the court are plaintiffs' and defendant Bayfield County's cross-motions for summary judgment. Because I find that § 912 and § 1248(c) apply to the right-of-way, that the railroad conveyed the right-of-way for a public highway and that defendant county has established a public highway along the right-of-way, I conclude that plaintiffs have no legal title to or interest in the right-of-way. Further, I find that the National Trails System Improvement Act of 1988, 16 U.S.C. § 1248(c), does not "repeal" the Abandoned Railroad Right of Way Act of 1922, 43 U.S.C. § 912, but modifies it to the extent that the reversionary right to abandoned railroad rights-of-way no longer falls to the adjoining landowner but to the United States. Because plaintiffs have no legal interest in the right-of-way at issue, they lack standing to seek a declaration that the right-of-way has been "abandoned" within the meaning of 43 U.S.C. § 912. I will grant defendant Bayfield County's motion for summary judgment and deny plaintiffs' motion for summary judgment.

From the proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiffs Douglas R. Mauler and Judy A. Mauler reside in Bayfield County, Wisconsin, on land located at Section 35, Township 47 North, Range 6 West, Town of Keystone and traversed by a railroad right-of-way. Defendant Union Pacific Railroad Company is a foreign corporation with its principal place of business in Omaha, Nebraska. Defendant Bayfield County is a political subdivision of the State of Wisconsin.

### B. *Background*

The abandoned railroad right-of-way at issue in this case, which I will refer to as "the strip," was originally a United States land grant to the State of Wisconsin transferred pursuant to the June 3, 1856 and the May 5, 1864 Acts of Congress. The 1856 Act granted to the State of Wisconsin:

> every alternate section of land designated by odd numbers for six sections in width on each side [of the railroad to be constructed] ... "that the lands hereby granted shall be exclusively applied in the construction of that road for which it was granted and selected, and shall be disposed of only as the work progresses, and the same shall be applied to no other purpose whatsoever ... [The lands granted to the State] shall be subject to the disposal of the legislature thereof, for purposes aforesaid, and no other; and the said railroads shall be and remain public highways for the use of the government of the United States...."

The same language is adopted by reference in the 1864 Act. The Acts granted federal lands to the State of Wisconsin "for the purpose of aiding in the construction of a railroad." The grants do not contain the phrase "right of way" but limit the manner in which states could dispose of the grant property, providing that "the said railroads shall be and remain public highways...."

In Wisconsin, railroads acquired interest in their rights-of-way by state patent, which included Section 35, as well as most other odd-numbered sections within ten miles of either side of the right-of-way. The State Act of 1874 authorized the North Wisconsin Railroad Company to receive a state patent. That company was subsequently consolidated with the Chicago, St. Paul, Minneapolis and Omaha Railway Company. In 1884, the State of Wisconsin conveyed Section 35, Township 47, North Range 6 to the Chicago, St. Paul, Minneapolis and Omaha Railway Company in fee simple, "in pursuance of the said several Acts of Congress." The Chicago, St. Paul, Minneapolis and Omaha Railway Company was a predecessor to the Chicago and North Western Transportation Company.

In November 1884, the Chicago and North Western conveyed Section 35 to a John Canfield with the following reservation:

> The said party of the first part [the Railroad], however, hereby expressly reserves to itself, its successors and assigns forever, the right to occupy a strip of land one hundred feet in width through, over, and across the premises granted as aforesaid, or any part thereof, the said strip to be included within two lines, each parallel with and distant 50 feet from, the center line of the railway of the party of the first part, as the same is now constructed and operated, or as the same may hereafter be located, constructed and operated....

The Chicago and North Western occupied and used the 100 foot wide strip of land as a right-of-way for its railroad for many years. On February 28, 1978, the Interstate Commerce Commission authorized the abandonment of the line and

discontinuance of service. No abandonment of the railroad line has yet been declared or decreed by a court of competent jurisdiction or by an Act of Congress. After the Interstate Commerce Commission certification, the Chicago and North Western discontinued railroad service on the line, removed the railroad tracks, ties, ballast and other structures from the strip and ceased paying taxes on the strip. On July 3, 1986, the State of Wisconsin Department of Transportation issued a Statement of Release in Interest. The statement provides that the state "releases any interest or right that it may have by virtue of Section 85.09, Wis. Stats., ... [in the Railroad's] abandoned line," including the strip.

In May 1989, the Chicago and North Western conveyed the strip to the Bayfield County Snowmobile Alliance, a Wisconsin nonprofit corporation. In June 1989, the Alliance reconveyed the strip to defendant Bayfield County, which paid for the strip with public funds. The county maintains and patrols the strip as a snowmobile trail at public expense. The strip is promoted for public use by the defendant county and is used widely by the public as a snowmobile trail and for hiking, biking, horseback riding and other recreational uses.

### C. *The Strip*

Plaintiffs believe that they are the legal owners of the land described as follows:

The Southeast One Quarter (SE 1/4) of the Northeast One Quarter (NE 1/4), Section Thirty-five (35), Township Forty-seven (47), North Range Six (6) West; and

North 360 feet of the Northeast Quarter (NE1/4) of the Southeast Quarter (SE 1/4), Section Thirty-five (35), Township Forty-seven (47), North Range Six (6) West.

The warranty deed that covers the majority of this land contains the following language: "Exception to warranties: Subject to and together with all easements, restrictions, reservations, and exceptions as may constitute or otherwise affect the chain of title to said premises." Plaintiffs acquired the remainder of the property through a quitclaim deed, which conveys the property described in the deed "less rights of way of record."

Bisecting plaintiffs' land is a 100 foot wide strip of land that is legally described as follows:

A strip of land 100 feet in width extending over and across the East Half of the East Half of Section 35, Township 47 North, Range 6 West of the Fourth Principal Meridian, said strip of land being 50 feet in width on either side of the center line of the main track (now removed) of the Chicago, St. Paul, Minneapolis and Omaha Railway Company (now the Chicago and North Western Transportation Company), as said main track center line was originally located and established over and across said Section 35.

In the spring of 1997, plaintiffs erected and maintained a five foot high wooden barrier across a cleared path on the strip in order to prevent people from driving snowmobiles and all-terrain vehicles and hunting on their land and the strip. On November 28, 1997, Patricia Thornton of the Bayfield County Tourism and Recreation Department told plaintiffs to remove the barrier. Several days later, unidentified persons took down the barrier without plaintiffs' consent. Plaintiffs reconstructed the wooden barrier in the spring of 1998 and agreed to remove it in November 1998, after defendant Bayfield County filed a lawsuit against them.

On October 27, 1998, defendant Bayfield County filed an action in the Circuit Court for Bayfield County against plaintiffs, seeking a declaratory judgment that it has a legally valid interest in the strip and a

right to use and maintain the strip as part of a snowmobile trail and an injunction enjoining plaintiffs from blocking the portion of the snowmobile trail crossing their property. On September 3, 1998, the circuit court issued an order in which it declared that defendant Bayfield County has a legally valid interest in the strip and a legal right to use and maintain the strip

until such time as it has been declared or decreed by a court of competent jurisdiction of by Act of Congress to have been abandoned for use as a railroad right of way, and more than one years [sic] has passed after the date of such declaration or decree without a public highway having been legally established thereon [as provided in 43 U.S.C. § 912]. No such declaration or decree has been made to date, nor does the decision of the Court herein or this judgment constitute such a declaration or decree.

The circuit court also enjoined plaintiffs from blocking the snowmobile trail or otherwise interfering with the use or maintenance of the trail as long as defendant Bayfield County has a legally valid interest in the strip. Plaintiffs did not assert in the circuit court that the Abandoned Railroad Right of Way Act of 1922 had been repealed by the National Trails System Improvement Act of 1998 and the circuit court did not consider the issue. On appeal, the court of appeals affirmed the judgment, refusing to consider plaintiffs' argument that the Abandoned Railroad Right of Way Act of 1922 was inapplicable to the strip because plaintiffs had failed to raise the argument in the circuit court despite having had the opportunity to do so.

## OPINION

### A. *Summary Judgment Standard*

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R.Civ.P. 56(c); *Weicherding v. Riegel,* 160 F.3d 1139, 1142 (7th Cir.1998). If the nonmoving party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the court must examine the facts in the light most favorable to the non-moving party. *Sample v. Aldi, Inc.,* 61 F.3d 544, 546 (7th Cir.1995).

### B. *Prior Proceeding in State Court*

This dispute between plaintiffs and defendant Bayfield County was the subject of a prior proceeding in state court. In that case, the Circuit Court for Bayfield County entered a judgment in favor of defendant Bayfield County, declaring that defendant has a legally valid interest in the strip, that defendant's interest continues at least until the railroad is declared abandoned by a court or Congress and that in the case of a decree of abandonment, rights to the strip are controlled by 43 U.S.C. § 912. *Bayfield County v. Mauler,* No. 98–CV–86. In the state court proceeding, plaintiffs argued that § 912 does not apply to the strip for the first time on appeal. The court of appeals declined to consider plaintiffs' argument because it had not been raised below. Although the issue presently before the court involves the same parties and the same dispute over the same strip of land, defendant Bayfield County has chosen not to assert the affirmative defense of issue preclusion. Deft.'s Br. in Support of Mo. for Summ. J., dkt. # 72, at 3.

The law of issue preclusion is intended to protect the parties from the burden of relitigating the same issue following a final judgment and to promote

judicial economy by preventing needless litigation. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Because issue preclusion is an affirmative defense, the party asserting it has the burden of proving that the doctrine applies. *Freeman United Coal Mining Co. v. Office of Workers' Compensation Program,* 20 F.3d 289, 294 (7th Cir.1994). (I note that *claim* preclusion is not available to defendant Bayfield County because it was the plaintiff and not the defendant in the state court proceeding. *See Cannon v. Loyola Univ. of Chicago,* 784 F.2d 777, 780 (7th Cir.1986) (principle of claim preclusion provides that plaintiff who has brought claim and had that claim resolved on merits cannot turn around and file same claim because initial result was unsatisfactory).)

Defendant Bayfield County would like this court to address the issue whether 43 U.S.C. § 912 applies to the strip for a practical reason: other property owners along the snowmobile trail could assert the same argument in the future, leaving the status of the trail in controversy. Rather than relitigating the issue at some future date, defendant Bayfield County has chosen to have the issue resolved in this case. Because defendant Bayfield County has waived the defense of issue preclusion, this federal prosecution is not barred by the previous state action.

### C. *Reversionary Interests under 43 U.S.C. § 912 and 16 U.S.C. § 1248(c)*

#### 1. *Whether 16 U.S.C. § 1248(c) repeals 43 U.S.C. § 912*

In 1922, Congress enacted 43 U.S.C. § 912 (Disposition of Abandoned Railroad Grants) as part of the Public Land Acts to insure that railroad rights-of-way would continue to be used for public transportation purposes. *Vieux v. East Bay Regional Park Dist.,* 906 F.2d 1330, 1335 (9th Cir.1990). Section 912 has been

interpreted to apply to federal lands granted both before 1871 (interpreted as "limited fee with right of reverter") and after 1871 (interpreted as "exclusive easement"). *Id.; Idaho v. Oregon Short Line R.R. Co.,* 617 F.Supp. 207, 210–11 (D.C.Idaho 1985).

43 U.S.C. § 912 addresses the disposition of federally granted rights-of-way that have been abandoned by the grantee railroad. A right-of-way is not considered forfeited or abandoned unless it has been "declared or decreed [so] by a court of competent jurisdiction or by Act of Congress." If a right-of-way in which the United States holds a reversionary interest is declared "abandoned," § 912 directs that the interest transfer to the owner of the land traversed by the railroad line. This transfer is subject to exceptions. The reversionary rights extinguish and the transfer does not occur if a "public highway" is legally established on the right-of-way within one year of a declaration of forfeiture or abandonment. In addition, the transfer does not take place if the railroad company had already conveyed the right-of-way before abandoning it and that conveyance had been validated and confirmed by an Act of Congress.

Closely related to § 912, 43 U.S.C. § 913 authorizes railroads to convey their land grant rights-of-way for use as public highways or streets. Section 913 provides:

> All railroad companies to which grants for rights of way through the public lands have been made by Congress, or their successors in interest or assigns, are hereby authorized to convey to any State, county, or municipality any portion of such right of way to be used as a public highway or street: Provided, That no such conveyance shall have the effect to diminish the right of way of such railroad company to a less width than fifty feet on each side of the center

of the main tract of the railroad as now established and maintained.

In 1958, Congress repealed the limitation that a railroad had to maintain fifty feet on either side of the centerline of the tract. 23 U.S.C. § 306; *State of Idaho v. Oregon Short Line R. Co.*, 617 F.Supp. 219, 220 (D.C.Idaho 1985).

In 1988, Congress changed its stance regarding the disposition of abandoned federal grant railway lines. It enacted 16 U.S.C. § 1248(c), adopted as part of the National Trails System Improvements Act of 1988, which was intended to encourage trail formation on former federal land grant rail corridors. Section 1248(c) states:

> Commencing [October 4, 1988], any and all right, title, interest, and estate of the United States in all rights-of-way of the type described in the act of March 8, 1922 (43 U.S.C. § 912), shall remain in the United States upon the abandonment or forfeiture of such rights-of-way, or portion thereof, except to the extent that any such right-of-way, or portion thereof, is embraced within a public highway no later than one year after a determination of abandonment or forfeiture, as provided under such Act.

The statute changed the disposition of the federal interests involved, causing them to revert to the United States rather than to be transferred to adjacent landowners. At the same time, § 1248 reaffirmed the public highway exception of § 912.

Plaintiffs argue that 16 U.S.C. § 1248(c) repealed 43 U.S.C. § 912. Because § 1248(c) does not contain any language repealing § 912 explicitly, plaintiffs must be asserting that § 1248(c) had the effect of repealing § 912, or that it was an implied repeal. Plaintiffs are correct that § 1248(c) changed the scheme for the disposition of federal contingent interests in land grant rights-of-way. However, § 1248(c) supersedes only that portion of

§ 912 addressing the recipient of reversionary rights, rather than abrogating § 912 without adding a new section to replace it. "When a provision is withdrawn from a section, the legislatures call the act an *amendment* particularly when a provision is added to replace the one withdrawn." Norman J. Singer, 1A Sutherland Statutory Construction § 23.02 (5th ed.1992) (emphasis in original). Thus, § 1248(c) "amends" or "modifies" § 912 rather than "repealing" it.

Defendant points to the fact that since the passage of § 1248(c), at least one court has continued to recognize § 912 as a valid statute. *See Vieux*, 906 F.2d at 1335–37. Although I agree with defendant that § 912 remains a valid statute with the exception of the disposition of reversionary interests, it is unclear why the Court of Appeals for the Ninth Circuit did not address the effect of § 1248(c) on § 912; the case was decided in 1990, two years after § 1248(c) was enacted. In any case, in *Vieux*, the court determined that the landowner plaintiffs did not have a reversionary interest under § 912 because the railroad had conveyed the federal grant right-of-way to the county for use as a public highway and the county had established a public highway. *Id.* at 1342. The court was not called upon to decide the disposition of reversionary rights. I conclude that § 1248(c) does not repeal § 912, but modifies it only to the extent that the federal government's reversionary rights to the abandoned right-of-way no longer fall to the adjoining landowner but to the United States.

It is perplexing why plaintiffs argue for the repeal of § 912 when the "repeal" of § 912 (and replacement by § 1248(c)) leaves plaintiffs in a worse position. Under § 912, plaintiffs possessed a potential non-vested interest in the right-of-way: if the railroad were declared abandoned and

if the right-of-way were not established as a public highway within one year of the declaration, then title would revert to plaintiffs. In contrast, under § 912, as modified by § 1248(c), plaintiffs do not possess even this potential reversionary interest. If the right-of-way were declared abandoned and a public highway were not established within one year of that declaration, the interest would revert to the United States and not to plaintiffs. It may be that plaintiffs are trying to avoid both § 912 and § 1248(c) in order to assert their interest under common law. However, I have already determined that § 912, as well as § 1248(c), applies to the strip. That § 1248(c) modifies the disposition of the reversionary interest does not change the determination that both of these statutes address the type of land at issue here: "public lands of the United States ... granted to any railroad company for use as a right of way for its railroad." 43 U.S.C. § 912.

### 2. Right of reverter

 Plaintiffs argue that the strip is not subject to a right of reverter, rendering § 912 inapplicable, as well as § 913 and § 1248(c). Plaintiffs base this contention on the fact that the grant pursuant to which the federal land was originally granted to the Railroad does not state explicitly that the grant constitutes a "right-of-way" but instead is a grant of "lands" "in aid of railroad construction" for the purpose of establishing a public highway. According to plaintiffs, the United States intended to retain a reversionary right in explicit grants of "rights-of-way" but not for lands limited to the purpose of establishing a railroad. The distinction that plaintiffs try to draw is unpersuasive.

The Supreme Court has characterized the nature of land grants made to the railroads before 1871 as "limited fee, made on an implied condition of reverter in the event that the company ceases to use or retain the land for the purpose for which it was granted." *Northern Pacific Railway Co. v. Townsend,* 190 U.S. 267, 271, 23 S.Ct. 671, 47 L.Ed. 1044 (1903); *see also Great Northern Railway Co. v. United States,* 315 U.S. 262, 267, 62 S.Ct. 529, 86 L.Ed. 836 (1942) (distinguishing between limited grants before 1871 and easements after 1871). In *Townsend,* 190 U.S. at 271, 23 S.Ct. 671, the grant did not state that it conveyed a "right-of-way" to the railroad. Instead, the grant contained a statement that the land could be used by the railroad only for the limited purpose of constructing and operating a railroad. The Court recognized that the United States has an interest in maintaining corridors for public transportation purposes. *Id.* The Court reasoned that because the railroad held a limited fee that it could not alienate in its discretion, the plaintiffs could not obtain an absolute, unlimited fee by adverse possession against the railroad. *Id.* at 272–73, 23 S.Ct. 671.

As in *Townsend,* the land grant under which the strip in this case was conveyed to the railroad was made for the limited purpose of constructing and operating a railroad. The grant states that the lands "shall be exclusively applied in the construction of that road for which it was granted and selected, and shall be disposed of only as the work progresses, and the same shall be applied to no other purpose whatsoever." Further, the grant recognized the long-term interest of the United States in the transportation corridor by limiting the manner in which the states could dispose of the federal land by stating that they "shall be and remain public highways." From the purpose of the grant and the conditions attached to the grant, I conclude that the United States intended to retain a reversionary interest in the strip just as it did in *Townsend.*

Plaintiffs assert that the reasoning in *Townsend* does not apply to this case but that *Noble v. Oklahoma City*, 297 U.S. 481, 56 S.Ct. 562, 80 L.Ed. 816 (1936), controls the outcome. Plaintiffs' reliance on the holding in *Noble* is misplaced. In *Noble*, the Supreme Court addressed the ownership rights to land that was part of a railroad line that had since been abandoned. In that case, the plaintiffs asserted that their predecessors in interest had owned the land and had granted an easement to the railroad. Thus, the plaintiffs argued that the land should revert to them when the railroad was abandoned. The city asserted that the railroad had acquired the right-of-way by an act of Congress and, therefore, that the land should revert to the municipality. The Court found for the plaintiffs, holding that the federal act authorizing construction of the railroad did not include any implied right of reverter. *Id.* at 494, 56 S.Ct. 562.

Plaintiffs assert that in *Noble*, the Court found for the plaintiffs because the federal act granting rights to the railroad did not include an express grant of a "right-of-way." However, the Court determined that the act was not a land grant at all, but authorized a taking upon compensation. *Id.* In *Noble*, the lands over which the railroad had been constructed were not unrestricted federal lands as in this case, but lands owned by the Creek Indian tribe. The grant from the United States gave the railroad permission to exercise eminent domain powers to obtain land from the Creek. Therefore, in *Noble*, there was no right of reverter and the lands at issue were not subject to § 912. The chain of title of the strip at issue distinguishes this case from the circumstances in *Noble*. I conclude that the United States retains a right of reverter in the strip as in *Townsend*. Accordingly, the disposition of the reversionary interest in the strip is governed by 43 U.S.C. § 912.

Plaintiffs argue that applying § 912 to this case would raise constitutional problems because it would result in a taking of private property for public use without just compensation. However, the strip's chain of title shows just the opposite. The strip was public property at the outset and was granted subsequently to a private entity in the public interest to promote economic development. The lands were given to the Railroad for the sole purpose of developing railroad rights-of-way. Those rights-of-way were to remain public highways for the use of the United States. Following *Townsend*, the restrictions placed on the grant demonstrate that Congress intended to retain a reversionary interest in the rights-of-way should they be abandoned. Through § 912, Congress merely provides for the disposition of the reversionary interest in public lands that it never relinquished. Therefore, the application of § 912 (or § 1248(c)) does not constitute a taking. In addition, as discussed below, plaintiffs lack standing to assert this claim because they do not have any reversionary interest in the strip.

### D. *Public Highway*

Having established that 43 U.S.C. § 912 and 16 U.S.C. § 1248(c) apply to the strip, I must determine whether the public highway exception applies to the facts of this case. Section 1248(c) provides that any non-vested reversionary rights are extinguished if the right-of-way is "embraced within a public highway no later than one year after a determination of abandonment or forfeiture, as provided under [§ 912]." 16 U.S.C. § 1248(c). In addition, 43 U.S.C. § 913 authorizes railroads to convey federally granted rights-of-way "to be used as a public highway or street." In this case, the facts demonstrate that the strip has already been established as a public highway. Therefore, the Railroad had the authority to convey the strip to

defendant Bayfield County through the Bayfield County Snowmobile Alliance.

State law determines the definition of a "public highway" for federal land grant statutes, including §§ 912 and 913. *Vieux,* 906 F.2d at 1341; *Standage Ventures, Inc. v. Arizona,* 499 F.2d 248, 250 (9th Cir.1974). Under Wisconsin law, the term "highway" includes "all public ways and thoroughfares and all bridges upon the same." Wis. Stat. § 990.01(12). The Supreme Court of Wisconsin has interpreted the term "highway" broadly. *Walker v. Green Lake County,* 269 Wis. 103, 112, 69 N.W.2d 252, 257 (1955) ("The conception of highways is changing and it is now felt that highways established for the general benefit must admit of new methods of use whenever it is found that the general benefit requires it."); *Heise v. Village of Pewaukee,* 92 Wis.2d 333, 348, 285 N.W.2d 859, 865 (1979) (strip of land used as roadway to lake for summer and winter sporting activities, fishing, boating and ice skating is "highway"); *Herbert v. City of Richland Center,* 264 Wis. 8, 11, 58 N.W.2d 461, 463 (1953) (pedestrian bridge is "highway").

Standing alone, the language of § 990.01(12) ("all public ways and thoroughfares") is broad enough to include recreational trails. This conclusion is strengthened by Wis. Stat. § 340.01(22), which provides that a "[h]ighway ... includes those roads or driveways in the state, county or municipal parks and in state forests which have been opened to the use of the public for the purpose of vehicular travel...." A "vehicle" is "every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except railroad trains." Wis. Stat. § 340.01(74). A snowmobile is "an engine-driven vehicle that is manufactured solely for snowmobiling." Wis. Stat. § 340.01(58a). Defendant Bayfield County and *Amicus Curiae* State of

Wisconsin assert that one or more types of vehicles use the strip traversing plaintiffs' property and, therefore, the current trail use is consistent with the Wisconsin concept of a public highway. I agree. The snowmobile trail is a permanent, public thoroughfare that falls within the definition of "highway" under Wisconsin law.

Plaintiffs rely on *Green Bay & Western Railroad Co. v. Transportation Comm.,* 123 Wis.2d 147, 365 N.W.2d 909 (Ct.App. 1985), for the proposition that a snowmobile trail is not a "public highway." However, in *Green Bay,* the court limited the scope of its finding to the issue whether "snowmobile trails are 'highways' within the meaning of sec. 195.29(1)"; if they were, the Transportation Commission would have the authority to regulate railroad crossings of the trails. *Id.* at 149, 365 N.W.2d at 910. The court determined that because the public's right to use the snowmobile trails at issue in that case was "transient," stemming from a five-year easement over private farmland, the trails were not "public ways" and had not been established as "highways." *Id.* In this case, the Transportation Commission's authority is not at issue: the public's right to use the strip is not transient (there is no easement for a limited term); and the railroad corridor has been in use as a rail line or a recreational trail for over one hundred years. Because *Green Bay* raised a different issue, the holding in that case does not change the determination that the strip is a "highway" under Wisconsin law.

 Defendant Bayfield County argues that the strip has been established as a public highway through common law dedication. Under Wisconsin law, the common law dedication of a highway requires an intention to dedicate expressed in some form and an acceptance of the dedication by the proper public authorities

or by the general public. *Poynter v. Johnston*, 114 Wis.2d 439, 447–48, 338 N.W.2d 484, 489 (1983); *see also Galewski v. Noe*, 266 Wis. 7, 13, 62 N.W.2d 703, 706 (1954) (deed reservations and map sufficient to show intent to dedicate, public use of street "whenever it was passable" sufficient to show acceptance). An intention to dedicate land for public use and an acceptance by the public are the essential elements of an absolute and complete dedication; the offer does not need to be expressed in writing or in any other particular format. *Poynter*, 114 Wis.2d at 448, 338 N.W.2d at 489.

In this case, there has been an offer of the strip for public use and an acceptance by the public, thereby accomplishing an absolute and complete dedication. The railroad and after it, the Bayfield County Snowmobile Alliance, conveyed the strip to defendant Bayfield County for the purpose of establishing a public snowmobile trail. Defendant accepted the conveyance and recorded the deed. Defendant has expended public funds to develop and maintain the trail and to advertise its availability for public use. The public has used the strip in substantial numbers. Because these facts demonstrate an intent to dedicate and acceptance more definite than those in *Galewski*, I find that a public highway has been established by common law dedication. I need not address defendant Bayfield County's argument that the strip has been established as a public highway through prescription under Wis. Stat. § 80.01(2)(a).

E. *Railroad's Right to Convey the Strip*

■ Because the strip is an established public highway, the Railroad had the authority to convey the strip to defendant Bayfield County by way of the Bayfield County Snowmobile Alliance pursuant to 43 U.S.C. § 913, which authorizes railroads to convey their land grant rights-of-way for use as "public highways or streets." Plaintiffs assert that the Railroad did not have authority to convey the right-of-way to the Bayfield County Snowmobile Alliance under § 913, so the second conveyance to defendant county is invalid. However, I find the fact that the strip passed through the hands of the Snowmobile Alliance as an intermediary to be without consequence. This intermediary step does not change the fact that the Railroad conveyed the strip to be used as a public recreational trail, which I have already determined constitutes an established public highway.

■ Plaintiffs contend that the Railroad did not have the authority to convey its interest in the strip to the Bayfield County Snowmobile Alliance or to defendant Bayfield County. Plaintiff assert that when the Railroad conveyed land to John Canfield, their predecessor in interest, it conveyed the entirety of the land, including the strip, in fee simple, reserving for itself only the right to occupy the strip of land. According to plaintiffs, the Railroad's interest in the strip transferred to plaintiffs at the moment the Railroad stopped using the strip for railroad purposes. Plaintiffs rely on *Pollnow v. State Dept. of Natural Resources*, 88 Wis.2d 350, 276 N.W.2d 738 (1979), in support of this proposition. In *Pollnow*, the court held that the railroad had no authority to convey a right-of-way to the Department of Natural Resources because the railroad's interest in the right-of-way reverted to the adjoining landowner when it ceased using the right-of-way for railroad purposes. *Id.* at 362, 276 N.W.2d at 744. In *Pollnow*, the court noted that the railroad did not obtain a grant of federal lands to construct a railroad but instead obtained an easement across the land of a private landowner who had been granted a patent to the land by the federal government. *Id.* at 355, 276 N.W.2d at 741. Because the rail-

road did not obtain an interest in the right-of-way through an act of Congress, the court turned to common law principles, under which land returns to the original owners or grantees when a railroad abandons an easement limited to railroad purposes. *Id.* at 362, 276 N.W.2d at 744. Thus, when the railroad abandoned the railway, its common law easement extinguished and it did not have the authority to convey the title to another party. *Id.* at 367, 276 N.W.2d at 746.

Despite plaintiffs' argument otherwise, the reasoning in *Pollnow* does not inform the outcome of this case. In *Pollnow,* the railroad did not obtain the right-of-way through a federal land grant, making it unnecessary for the court to discuss anything other than common law principles regarding railroad easements; it did not address the federal statutes governing the disposition of federal lands conveyed to a railroad for railroad purposes. The court stated explicitly that it "ma[d]e no holding as to the power of the Congress or the state Legislature to preserve the rights of the public in existing rail corridors for multiple public uses, including transportation, conservation or recreation." *Id.* at 367, 276 N.W.2d at 746. Because 43 U.S.C. §§ 912 and 913 were not at issue in *Pollnow,* the court's reasoning applies only to common law dispositions of abandoned railroads and does not establish that the Railroad in this case did not have the authority to convey the right-of-way after it ceased using the strip for railroad purposes.

### F. Judicial Decree of Abandonment

■ It is undisputed that there has never been a formal declaration of abandonment by either an act of Congress or a court of competent jurisdiction. Plaintiffs ask this court to make that declaration as a court of competent jurisdiction. However, defendant Bayfield County asserts that this court should refrain from making this determination because plaintiffs lack standing to ask for the declaration because plaintiffs possess no interest in the strip. Defendant Bayfield County itself has not asked for a ruling that the strip has been "abandoned" within the meaning of § 912.

Standing is the determination whether a specific person is the proper party to bring a matter to the court for adjudication. The "question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Supreme Court has identified three constitutional standing requirements. The plaintiff must allege that: (1) she has suffered or imminently will suffer an injury; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable federal court decision is likely to redress the injury. *Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The Court has also identified prudential standing principles, one of which is relevant to this case: generally, a party may assert only her own rights and not the claims of parties not before the court. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

I agree with defendant Bayfield County that plaintiffs lack standing to ask this court for a declaration that the strip is "abandoned." Plaintiffs have standing to bring this suit in the first instance; a determination that 43 U.S.C. § 912 or 16 U.S.C. § 1248(c) does not apply to the strip would likely redress plaintiffs' alleged injury by quieting title to the strip in plaintiffs. However, once I determined that these statutes apply to the strip and control its disposition, I concluded that the Chicago and North Western had the authority to convey the strip (as an established public highway) to defendant Bayfield County by way of the Bayfield

County Snowmobile Alliance. Because I determined that plaintiffs do not have an interest in the strip, plaintiffs no longer have standing to ask for a declaration that the strip has been "abandoned." Regardless whether the strip is declared abandoned, it is an established public highway that was conveyed properly by the Railroad. This finding is reinforced by defendant's argument that a ruling on abandonment would be meaningless because a public highway has already been established on the strip. Thus, plaintiffs fail the third constitutional standing requirement: they cannot show that a favorable decision by this court is likely to redress their alleged injury. *Bennett,* 520 U.S. at 167, 117 S.Ct. 1154.

In addition, plaintiffs fail one of the prudential standing requirements. Because I have determined that 43 U.S.C. § 912, as modified by 16 U.S.C. § 1248(c), controls the disposition of the strip, if the conveyance by the Railroad were not proper, the strip would revert to the United States, and not plaintiffs. Thus, by asking for a declaration that the strip is "abandoned," plaintiffs are asserting the rights of the United States, a party not before the court. *Allen,* 468 U.S. at 751, 104 S.Ct. 3315.

### ORDER

IT IS ORDERED that

1. Defendant Bayfield County's motion for summary judgment against plaintiffs Douglas R. and Judith A. Mauler is GRANTED.

2. Plaintiffs' motion for summary judgment is DENIED.

3. The parties may have until December 17, 2001, in which to inform the court whether there remain any claims against defendant Union Pacific Railroad Company. If this court receives no response by that date, the clerk of court is directed to enter judgment for defendants and close this case.